[L.A. No. 30406. Sept. 2, 1976.]

JOSEPH A. LODER, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE SAN DIEGO JUDICIAL
DISTRICT OF SAN DIEGO COUNTY et al.,
Defendants and Respondents;
THE PEOPLE, Real Party in Interest and Respondent.

**COUNSEL**

Jean Leonard Harris for Plaintiff and Appellant.

Sheldon Portman, Public Defender (Santa Clara), Frank D. Berry, Jr., Deputy Public Defender, Joseph Remcho, Deborah Hinkel, Ellen Lake, Susan Sawyer, Amital Schwartz, Fred Okrand, Anthony G. Amsterdam, Daniel M. Luevano, Rosalyn M. Chapman, Philip L. Goar, Richard A. Paez, Kenneth Hecht, Judith Kurtz, Les A. Hausrath, Stefan Rosenzweig and Henry Hewitt as Amici Curiae on behalf of Plaintiff and Appellant.

John W. Witt, City Attorney, Stuart H. Swett, Chief Deputy City Attorney, Paul E. Robinson and Peter L. Dean, Deputy City Attorneys, for Defendants and Respondents and for Real Party in Interest and Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, and Jeffrey A. Joseph, Deputy Attorney General, as Amici Curiae on behalf of Defendants and Respondents and Real Party in Interest and Respondent.

## OPINION

**MOSK, J.**—Plaintiff appeals from a judgment denying a writ of mandate to compel erasure or return of the record of an arrest which did not result in conviction. As will appear, we conclude that he is not entitled to the relief sought and hence that the judgment should be affirmed.

The principal factual allegations of plaintiff's petition for writ of mandate are as follows: on July 22, 1972, plaintiff attacked San Diego Police Officer Gosnell as the latter was beating plaintiff's wife with a nightstick. Plaintiff was arrested for battery, obstructing a police officer, and disturbing the peace, and a criminal complaint was filed charging him with these offenses.

Officer Gosnell was thereafter reported for the incident and temporarily suspended from duty. The city attorney decided not to press the charges against plaintiff, and on November 22, 1972, the criminal complaint was dismissed by the municipal court for lack of prosecution. Concurrently therewith plaintiff executed a covenant not to sue, agreeing in consideration of the dismissal not to pursue any claim for damages against Officer Gosnell.

At the time of the dismissal plaintiff moved for an order "by way of mandamus" directing all police agencies to erase all records of his arrest. The municipal court denied the motion, finding no statutory authority for such an order. Plaintiff's appeal to the appellate department of the superior court was dismissed on the ground the ruling was non-appealable.

Plaintiff then wrote directly to the chief of police and the records custodian of the San Diego Police Department, requesting them to erase his arrest record and refrain from sending it to federal law enforcement agencies. When no action was taken in response, plaintiff filed the present action for writ of mandate in the superior court. He named as respondents the presiding judge of the municipal court and the San Diego Chief of Police and records custodian, and prayed that they be compelled (1) to erase all record of the arrest of July 22, 1972, and (2) to

notify all agencies which received a copy of that record that it has been erased, and request them to do likewise.[1]

After a hearing the court found that respondents will not disseminate the record of plaintiff's arrest to the public in general, and concluded in reliance on *Sterling* v. *City of Oakland* (1962) 208 Cal.App.2d 1 [24 Cal.Rptr. 696], that respondents are under no duty to erase or return the record to plaintiff. The court therefore denied the writ, and plaintiff brought this appeal.

■ A writ of mandate will lie only "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; . . ." (Code Civ. Proc., § 1085.) More particularly, "Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty [citation]." (*People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193].) ■ Inasmuch as plaintiff fails to satisfy the first of these requirements, we need not reach the second.

Plaintiff points to no statute or ordinance—and we have found none—which imposes on respondent presiding judge of the municipal court or on either of respondent police officials "a duty resulting from [his] office" to comply with plaintiff's demand for erasure or return of the record of his arrest. On the contrary, such an act appears to be forbidden by Government Code section 6200, which provides in pertinent part that "Every officer having the custody of any record . . . or of any paper or proceeding of any court, filed or deposited in any public office, or placed in his hands for any purpose, who is guilty of . . . wilfully destroying, mutilating, defacing, altering or falsifying, removing or secreting the whole or any part of such record, . . . paper, or proceeding, or who permits any other person to do so," is punishable by a prison term of up to 14 years. An arrest record is clearly a document which may properly be kept by a public officer in the discharge of his duties, and hence is within the scope of the statute. (See *People* v. *Pearson* (1952) 111 Cal.App.2d 9, 31 [244 P.2d 35].) And inasmuch as no showing of specific

---

[1]The remainder of the prayer is ambiguous. It states, "or in the alternative return to petitioner all evidence of said arrest record and henceforth desist from dissemination of any information in its regard . . . ." It is unclear whether this alternative is directed to respondents or to the agencies which received a copy of plaintiff's arrest record. In view of our disposition herein, the question is moot.

intent is required by the statute, an officer who knowingly removes or destroys such a document is punishable even though he acts without a criminal purpose. (*Id.,* at p. 18; accord, *People* v. *O'Brien* (1892) 96 Cal. 171, 175-179 [31 P. 45]; *People* v. *Tomalty* (1910) 14 Cal.App. 224, 229-230 [111 P. 513].)

■ Lacking legislative authority, plaintiff turns to two broad constitutional provisions. He asserts that official retention and dissemination of his arrest record violates his right of privacy (Cal. Const., art. I, § 1) and deprives him of due process of law (Cal. Const., art. I, § 7, subd. (a); U.S. Const., 5th & 14th Amends.). He notes that each of the respondents took an oath to uphold the federal and state Constitutions, and he concludes that each therefore has a clear and present duty resulting from his office to prevent the claimed violations. As will appear, the constitutional premises of the argument are faulty.

The right of privacy added to the California Constitution by a 1972 amendment of article I, section 1, is not absolute. In *White* v. *Davis* (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222], we observed that "the amendment does not purport to prohibit all incursion into individual privacy but rather that any such intervention must be justified by a compelling interest." For example, in *County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662, 672 [114 Cal.Rptr. 345, 522 P.2d 1345], we held that the right of privacy does not prevail over "the right of the public to an honest and impartial government," as implemented by legislation requiring a variety of public officials and candidates to disclose their financial interests. (Gov. Code, § 3600 et seq.)

In the case at bar respondents assert a similar compelling interest in limited retention and dissemination of arrest records. The interest may be characterized generally as the promotion of more efficient law enforcement and criminal justice; more specifically, the state's purpose is to protect the public from recidivist offenders.

This interest is manifested at a number of stages of the criminal process. First, at the time of arrest the suspect's right of privacy is obviously outweighed by the necessity of identifying him correctly, and does not give him the right to refuse to disclose his name and address to the arresting officer. Not only may such information be taken down, it may be immediately put to use: the officer may transmit the data to his headquarters in order to determine whether the arrestee is wanted on

any other charge or is a fugitive, or whether he presents a threat to the officer's safety. If the arrestee is thereafter transported to the police station and booked, the identification process may lawfully extend to taking his fingerprints and photograph, and recording his vital statistics. (See Pen. Code, § 7, subd. 21.)

■ In addition, the suspect's right of privacy is not violated by prompt and accurate public reporting of the facts and circumstances of his arrest: "It is also generally in the social interest to identify adults currently charged with the commission of a crime. While such an identification may not presume guilt, it may legitimately put others on notice that the named individual is suspected of having committed a crime. Naming the suspect may also persuade eyewitnesses and character witnesses to testify. For these reasons, while the suspect or offender obviously does not consent to public exposure, his right to privacy must give way to the overriding social interest." (*Briscoe* v. *Reader's Digest Association, Inc.* (1971) 4 Cal.3d 529, 536 [93 Cal.Rptr. 866, 483 P.2d 34, 57 A.L.R.3d 1]; see also *Kapellas* v. *Kofman* (1969) 1 Cal.3d 20, 38 [81 Cal.Rptr. 360, 459 P.2d 912].)

Next, the information derived from the arrest may be used by the police in several ways for the important purpose of investigating and solving similar crimes in the future. We have held, for example, that a photograph taken pursuant to even an illegal arrest may be included among those shown to a witness who is asked to identify the perpetrator of a subsequent crime. (*People* v. *McInnis* (1972) 6 Cal.3d 821, 825-826 [100 Cal.Rptr. 618, 494 P.2d 690].) This is a fortiori permissible in the case of a lawful arrest; and the same identification function is served, of course, by the arrestee's fingerprints and other recorded physical description.

Even if no such direct connection with the later offense can be made, an arrest record may under appropriate conditions be a valuable investigative tool for the discovery of further evidence. Often the prior arrest is not an isolated event but one of a series of arrests of the same individual on the same or related charges. This is especially true when the crime in question is typically subject to recidivism, such as the use of addictive drugs, child molesting, indecent exposure, gambling, bookmaking, passing bad checks, confidence frauds, petty theft, receiving stolen goods, and even some forms of burglary and robbery. In these circumstances a pattern may emerge—for example, a distinctive modus

operandi—which has independent significance as a basis for suspecting the arrestee if the crime is committed again.

At the very least, the suspicion thus focussed will justify additional investigation. If it is coupled with independent evidence of criminal involvement, it may amount to probable cause to arrest: "Although previous arrests of a suspect in connection with illicit drug transactions will certainly not suffice to constitute probable cause for search or arrest, and while, indeed, arrests without convictions may be of little probative value, still a suspect's reputation as being involved in illicit drug traffic based on prior arrests may be considered." (*People* v. *Buchanan* (1972) 26 Cal.App.3d 274, 292 [103 Cal.Rptr. 66], and cases cited.) When the investigating officer knows of such a pattern, "that knowledge can be used, in connection with other information, to support a finding of probable cause for arrest." (*People* v. *Martin* (1973) 9 Cal.3d 687, 692, fn. 5 [108 Cal.Rptr. 809, 511 P.2d 1161].)

While a record of arrests not resulting in conviction is generally inadmissible at trial, it may serve significant functions in both pretrial and post-trial proceedings. First, among the circumstances often taken into account in the exercise of prosecutorial discretion is the arrest record of the defendant. For example, prosecutors have considered that record, or information developed therefrom, in deciding whether to file a formal charge against the defendant, or whether to prosecute as a felony or as a misdemeanor a crime which can be either class of offense, or whether to agree to a bargain for a specified penalty or a plea to a lesser offense. In particular, when the defendant is charged with a crime involving possession of narcotics or restricted dangerous drugs, the district attorney is vested with statutory authority to decide whether he is eligible to be "diverted" into an alternate program of treatment and rehabilitation. (Pen. Code, § 1000.) The code requires a determination of ineligibility if the district attorney finds, inter alia, "evidence" that the defendant has a history of narcotics offenses other than simple possession. In *Sledge* v. *Superior Court* (1974) 11 Cal.3d 70, 75, footnote 4 [113 Cal.Rptr. 28, 520 P.2d 412], we recognized that such "evidence" may include prior narcotics arrests of the defendant not resulting in a conviction, listed on his rap sheet.[2]

---

[2]Even a juvenile arrest or detention record, declared by statute to be confidential and immune from disclosure to prospective employers and other third parties, may serve an important function in evidencing a pattern of suspicious behavior in appropriate cases. In *T. N. G.* v. *Superior Court* (1971) 4 Cal.3d 767 [94 Cal.Rptr. 813, 484 P.2d 981], two juveniles were taken into custody for loitering near a school in violation of Penal Code

After the defendant has been appropriately charged, the court is usually called upon to determine the question of pretrial release. Again arrest records may be relevant. The form by which the defendant applies to be released on his own recognizance or on bail often provides for him to list his prior arrests and their dispositions. (See, e.g., 1 Cal. Criminal Law Practice (Cont.Ed.Bar 1964) § 2.24.) These matters may then be considered by the court in conjunction with all other relevant information, in deciding whether to release the defendant on recognizance or in fixing the appropriate amount of bail.[3]

Upon conviction, the case of each eligible felony defendant is referred to the probation officer. That officer must investigate the circumstances of the crime and "the prior history and record of the person," and report his findings and recommendations to the court. (Pen. Code, § 1203, subd. (a).) Any prior arrest record of the defendant is routinely obtained and included in the report as part of his criminal history. (2 Cal. Criminal Law Practice (Cont.Ed.Bar 1969) §§ 18.63, 18.80.) In *People v. Peterson* (1973) 9 Cal.3d 717, 725-726 [108 Cal.Rptr. 835, 511 P.2d 1187], we reaffirmed the principle that upon conviction, evidence which would be inadmissible on the issue of guilt may be received for the purpose of determining whether and upon what conditions to grant probation, provided the proceedings remain fundamentally fair. For this purpose it has been held that the court may properly consider not only current arrests of the defendant giving rise to charges still pending (*People v.*

section 653g, but were released in a few hours without charges being filed. We sustained the trial court's denial of a petition to seal the records of the detention without waiting the statutory five years (Welf. & Inst. Code, § 781), holding that their confidentiality was sufficiently protected in the interim by numerous provisions of the Juvenile Court Law. We recognized that if the petitioners had been similarly released after being charged as adults, they would have been entitled to immediate sealing (Pen. Code, § 851.7); but we rejected their claim of violation of equal protection, reasoning that "A legitimate and substantial interest supports the policy of permitting juvenile court personnel to retain information about a juvenile's detention, even when such detention does not result in a wardship proceeding. In such a case the retention of the record of detention still rests upon a rehabilitative purpose. As the juvenile court in the instant matter pointed out, the detention record will assist the court's personnel in assessing any later conduct by the juvenile. A single incident may not reveal a pattern of behavior which would require action by the juvenile court. But the past record of the juvenile with the juvenile court may enable a probation officer to recognize a development which requires informal probation, a petition for wardship, or other appropriate treatment." (*Id.*, at p. 783.) We summed up the point by stating that "the retention of the records of *even the innocent* juvenile serves certain salutary purposes." (Italics added; *id.*, at p. 771.)

[3]In fixing the amount of bail the court is directed by statute to take into account "the previous criminal record of the defendant." (Pen. Code, § 1275.) And Penal Code section 1204.5 prohibits the court, prior to a plea or finding of guilty, from considering "any information reflecting the arrest or conviction record of a defendant" *except* in connection with "any application for an order fixing or changing bail . . . ."

*Escobar* (1953) 122 Cal.App.2d 15, 18 [264 P.2d 571]), but also prior arrests which did not result in conviction (*People* v. *White* (1952) 109 Cal.App.2d 296, 298 [240 P.2d 728], and cases cited; but see *People* v. *Calloway* (1974) 37 Cal.App.3d 905, 908-909 [112 Cal.Rptr. 745] (dictum)). And it has also been held that if the defendant is sentenced to prison, the Adult Authority may take his arrest record into account in determining when to release him on parole. (*Azeria* v. *California Adult Authority* (1961) 193 Cal.App.2d 1, 5 [13 Cal.Rptr. 839].)

■ Taken together, the multiple purposes for which police, prosecutors, courts, and probation and parole authorities may consult records of arrests not resulting in conviction thus constitute a substantial governmental interest. (See also Pen. Code, § 13100, eff. July 1, 1978.) Against this, we must weigh the arrestee's legitimate concern to protect himself from improper uses of his record.[4] According to the extensive literature on the topic, the principal dangers are inaccurate or incomplete arrest records, dissemination of arrest records outside the criminal justice system, and reliance on such records as a basis for denying the former arrestee business or professional licensing, employment, or similar opportunities for personal advancement.[5]

---

[4]This concern appears to be the nub of plaintiff's vaguely worded claim of a potential denial of due process of law. Because of the legislative and administrative safeguards discussed hereinafter, the claim is not persuasive and we shall not further advert to it.

[5]See, for example, Haskel, *The Arrest Record and New York City Public Hiring: An Evaluation* (1973) 9 Colum.J.L. & Social Prob. 442, 445-448; Karabian, *Record of Arrest: The Indelible Stain* (1972) 3 Pacific L.J. 20, 21-24; Steele, *A Suggested Legislative Device for Dealing with Abuses of Criminal Records* (1972) 6 U.Mich.J.L. Reform 32, 38-42; Schiavo, *Condemned by the Record* (1969) 55 A.B.A.J. 540, 541-542; Hess & Le Poole, *Abuse of the Record of Arrest Not Leading to Conviction* (1967) 13 Crime & Del. 494, 495-498; Comment, *Arrest Records—Protecting the Innocent* (1974) 48 Tul.L.Rev. 629, 634-636; Comment, *Maintenance and Dissemination of Criminal Records: A Legislative Proposal* (1972) 19 U.C.L.A.L.Rev. 654, 664-665; Comment, *Retention and Dissemination of Arrest Records: Judicial Response* (1971) 38 U.Chi.L.Rev. 850, 853; Comment, *Arrest Records as a Racially Discriminatory Employment Criterion* (1970) 6 Harv.Civ. Rights-Civ.Lib.L.Rev. 165, 168-171; Comment, *Guilt by Record* (1965) 1 Cal. Western L. Rev. 126-129; Note, *The Dissemination of Arrest Records and the Iowa TRACIS Bill* (1974) 59 Iowa L.Rev. 1162, 1163-1166; Note, *Removing the Stigma of Arrest: The Courts, The Legislatures and Unconvicted Arrestees* (1972) 47 Wash.L.Rev. 659, 660-662; Note, *A Constitutional Right to the Return of Fingerprints and Photographs on Acquittal* (1972) 37 Mo.L.Rev. 709, 713-714; Note, *Discrimination on the Basis of Arrest Records* (1971) 56 Cornell L.Rev. 470-475; Note, *Menard* v. *Mitchell* (1971) 46 Notre Dame Law. 825, 830; see generally Alexander & Walz, *Arrest Record Expungement in California: The Polishing of Sterling* (1974) 9 U.S.F.L.Rev. 299; Kogon & Loughery, *Sealing and Expungement of Criminal Records—The Big Lie* (1970) 61 J.Crim.L.C. & P.S. 378; Baum, *Wiping Out a Criminal or Juvenile Record* (1965) 40 State Bar J. 816; Booth, *The Expungement Myth* (1963) 38 L.A. Bar Bull. 161; Comment, *Criminal Records of Arrest and Conviction: Expungement From the General Public Access* (1967) 3 Cal. Western L.Rev. 121; Note,

We do not underestimate the adverse effects on an individual's later life if these dangers materialize. But we are convinced that in California the risks have been greatly diminished in recent years by significant legislative and executive action. We shall summarize the principal features of that response.

*First.* The Legislature has provided in effect that a substantial proportion of arrests not resulting in conviction shall not be recorded as arrests but simply as "detentions." Penal Code section 849.5 states that "In any case in which a person is arrested and released and no accusatory pleading is filed charging him with an offense, . . . the arrest shall not be deemed an arrest, but a detention only."[6] (See also § 849, subd. (c).) This directive is implemented by section 851.6, subdivision (b), which declares that in every such instance "the person shall be issued a certificate by the law enforcement agency which arrested him describing the action as a detention," and subdivision (d) of the same section, which mandates that "Any reference to the action as an arrest shall be deleted from the arrest records of the arresting agency and of the Bureau of Criminal Identification and Investigation of the Department of Justice. Thereafter, any such record of the action shall refer to it as a detention."[7]

*Second.* The Legislature has taken a number of steps to insure that a record of arrest or detention be complete, i.e., that it also show the final disposition of the charge. To begin with, the record of any arrest deemed to be a detention must include "a record of release." (§ 849.5.) More specifically, each law enforcement agency which makes an arrest and reports it to the Department of Justice or the Federal Bureau of Investigation must "furnish a disposition report to such agencies" whenever the person is transferred to another agency or is released without charges being filed. (§ 11115.) If the arrest is thus deemed to be a detention only, the disposition report must state "the specific reason" for

---

*Menard* v. *Saxbe* (1975) 8 Loyola L.A. L.Rev. 238; Note, *Maintenance and Dissemination of Records of Arrest Versus The Right to Privacy* (1971) 17 Wayne L.Rev. 995.

[6]In the remainder of this opinion all statutory references, unless otherwise specified, are to the Penal Code.

[7]It is true that in construing the Juvenile Court Law we expressed the view that the word "detained" has come to involve "only slightly less stigma" than the word "arrest." (*T. N. G.* v. *Superior Court* (1971) *supra,* 4 Cal.3d 767, 779.) But the stigma may be measurably less when the person is an adult; and in any event, we cite the above sections of the Penal Code as only one of several legislative efforts to minimize the possible adverse consequences of an arrest record on a person's later life. Other statutory developments discussed hereinafter may well be more effective in achieving this goal.

the release, e.g., exoneration of the person detained, withdrawal of the complaint, or insufficient evidence to proceed. (*Ibid.*)

In cases in which formal charges are filed, section 11116 requires the clerk of the court to furnish a disposition report to the law enforcement agency primarily responsible for investigating the offense. The statute lists no less than 18 possible dispositions,[8] and directs that the report specify as many as are appropriate or "Any other disposition by which the case was terminated." In addition, the statute provides that when the case is dismissed on any of several general grounds (e.g., pursuant to §§ 995 or 1385) the court shall state not only the disposition label but also "the particular reasons" for the disposition.

Such disposition reports must be forwarded to the Department of Justice and the Federal Bureau of Investigation within 30 days after the release of the person arrested or detained or the termination of court proceedings. (§ 11117.)[9] In turn, the Department of Justice must add such reports to "all appropriate criminal records" (*ibid.*; see also § 11116.6). And each law enforcement agency receiving such a report is required to transmit a copy thereof "to all the bureaus to which arrest data has been furnished." (§ 11115, last par.)[10]

In addition, a person who is the subject of a disposition report is guaranteed access thereto. In any case in which the offense charged was punishable by imprisonment for more than 90 days, the court upon request must furnish the person with a certificate setting forth the particular ground of disposition. (§§ 11116.7-11116.9.) And in all cases, the person is granted the right to use the disposition label on his record "as an answer to any question regarding his arrest or detention history or any question regarding the outcome of a criminal proceeding against him." (§ 11116.5.) We shall see other examples of statutes expressly authorizing a former arrestee to answer "questions" about his criminal history by reference to the final version of his record.

[8]On various grounds these dispositions include compromise, suspension of proceedings, dismissal, discharge, acquittal, conviction, mistrial, and arrest of judgment.

[9]As of July 1, 1978, all court dispositions will be required to be reported to the Department of Justice by the appropriate agency within 10 days. (§ 13151, eff. July 1, 1978.)

[10]Special statutes contain similar provisions. Thus in cases in which a narcotics defendant has been diverted into a drug rehabilitation program, Penal Code section 1000.5 directs that any record filed with the Department of Justice indicate the ultimate disposition of the proceeding; and in all juvenile cases, Welfare and Institutions Code section 504 prohibits the Department of Justice from transmitting to any person or agency any record of the arrest or detention of a minor "unless such information also includes the disposition resulting therefrom."

*Third.* The Legislature has created a detailed mechanism whereby the person may inspect all criminal records pertaining to him and maintained by the Department of Justice. (§§ 11120-11125.) As the individual most directly concerned, he evidently has the most incentive to insure that the record is correct. If he believes any record is inaccurate or incomplete he may request the department to correct it, and the department must forward the request to the agency which originated the information; if that agency agrees the record is inaccurate or incomplete, it must correct it and notify the department to do likewise; if the agency disagrees, the person is entitled to have the dispute resolved by administrative adjudication, followed by judicial review. (§ 11126.)

*Fourth.* In a growing number of contexts the Legislature has mandated that at a certain stage of the proceedings arrest records are to be physically sealed. The first group of statutes to authorize this procedure dealt with juvenile offenders. Thus section 851.7 provides that any minor arrested for a misdemeanor is entitled upon request to "an order sealing the records in the case, including any records of arrest and detention," if he was released without formal charge, or the proceedings were subsequently dismissed, or he was acquitted. In that event "the arrest, detention, and any further proceedings in the case shall be deemed not to have occurred, and the petitioner may answer accordingly any question relating to their occurrence."[11] The same relief is available to · any minor convicted of a misdemeanor who has successfully served his sentence or fulfilled the conditions of his parole (§ 1203.45),[12] or, upon a showing of rehabilitation, to any minor five years after termination of the juvenile court's jurisdiction over him, or on reaching the age of 18 (Welf. & Inst. Code, § 781).

Recent legislation has extended the remedy of sealing to certain adult defendants. Thus, arrest records and all other documents in the case may

---

[11]The statute provides (subd. (e)) that it does not apply to sex offenses, vehicular violations, and narcotics crimes. The exclusion of the latter category of misdemeanors was held unconstitutional as a violation of equal protection of the laws in *People* v. *Pruett* (1975) 51 Cal.App.3d 329 [124 Cal.Rptr. 273].

[12]Again the statute (subd. (c)) is not applicable to sex offenses, vehicular violations, and narcotics crimes; and again the latter exclusion was held to violate equal protection. (*People* v. *Ryser* (1974) 40 Cal.App.3d 1 [114 Cal.Rptr. 668]; see also *McMahon* v. *Municipal Court* (1970) 6 Cal.App.3d 194, 200 [85 Cal.Rptr. 782] (statute must apply, on equal protection grounds, to minor arrested for ·a felony-misdemeanor but not charged with any offense).)

Plaintiff herein, an adult, cannot claim that the limitation of section 1203.45 to juvenile offenders denies him equal protection: "There is nothing arbitrary or capricious in affording persons treated as juveniles the right to have records sealed and denying that right to persons treated as adults." (*McMahon* v. *Municipal Court, supra,* at p. 198 of 6 Cal.App.3d; see also *T. N. G.* v. *Superior Court* (1971) *supra,* 4 Cal.3d 767, 782-784.)

now be sealed upon request whenever a person charged with any offense has been acquitted and it appears to the judge that he was "factually innocent"; and in that event, the court must "inform the defendant that he may thereafter state that he was not arrested for such charge and that he was found innocent of such charge by the court." (§ 851.8.) The clerk of the court is required to report the order of sealing to the Department of Justice (§ 11116, last par.); and upon receipt of that report, the Bureau of Criminal Identification and Investigation must send notice of the sealing to all officers and agencies it had previously advised of the arrest (§ 11105.5).[13]

*Fifth.* The Legislature has established multiple safeguards against the improper dissemination of arrest records. Section 11076 declares generally the principle that "Criminal offender record information shall be disseminated, whether directly or through any intermediary, only to such agencies as are, or may subsequently be, authorized access to such records by statute." (See also § 11081.) Section 11105 then sets forth two categories of agencies and persons authorized by law to receive criminal record information compiled at the state level by the Attorney General.[14] The first category is comprised of agencies and persons to whom the Attorney General is required to furnish this information "when needed in the course of their duties." (§ 11105, subd. (b).) It includes the courts, certain classes of peace officers performing traditional law enforcement functions, district attorneys, probation and parole officers, defense attorneys when so authorized, and state or local agencies or officers in

[13]Similarly, upon successful completion of a narcotic drug diversion program "the arrest upon which the diversion was based shall be deemed to have never occurred. The divertee may indicate in response to any question concerning his prior criminal record that he was not arrested or diverted for such offense." (§ 1000.5.)

Also relevant here is the California Criminal Record Purge Program administered by the Department of Justice. Under that program the department voluntarily "purges"—by physically destroying—criminal records in its files after they have been retained for various periods of time. The present timetable is generally as follows: (1) records of arrests for minor traffic offenses, violations of local ordinances, public drunkenness, and disorderly conduct will not be retained at all; (2) records of misdemeanor arrests not resulting in conviction or later deemed to be "detentions" will be retained for 5 years; (3) records of misdemeanor convictions and felony arrests will be retained for 7 years; and (4) records of felony convictions will be retained until the offender reaches age 70 and has not been arrested during the previous 10 years. Special rules govern juveniles and certain other offenders. The department is currently applying these standards both to its existing files and to all new records it receives. (Cal. Dept. of Justice, Criminal Record Purge Handbook (1975) *passim.*)

[14]An essentially identical statute has been enacted governing dissemination of criminal record information compiled by local law enforcement agencies. (§ 13300, eff. July 1, 1978.)

strictly limited circumstances.[15] The second category is composed of other agencies or officers to whom the Attorney General "may" furnish this information, but he is permitted to do so only "upon a showing of a compelling need." (Subd. (c).)[16]

To enforce these restrictions the Legislature has decreed criminal penalties for unauthorized dissemination of records. It is a misdemeanor for an employee of the Department of Justice (§ 11141) or "Any person authorized by law to receive a record" or information therefrom (§ 11142) to knowingly furnish that record or information to an unauthorized person. Indeed, such materials are virtually treated as contraband, as it is further declared that any unauthorized person who knowingly "buys, receives, or possesses" such a record or information is also guilty of a misdemeanor. (§ 11143.)[17] In addition, a statutory civil penalty is provided: in all cases in which criminal record information is unlawfully disseminated in violation of sections 11141 to 11143, the injured party may sue to recover his actual damages or $200, whichever is greater, together with costs and attorney's fees. (Lab. Code, § 432.7, subd. (b).)

For further implementation the Legislature called upon the expertise of the executive branch. Section 11077 makes the Attorney General "responsible for the security" of criminal record information, and mandates that he (1) establish regulations to assure that such information shall not be disclosed to unauthorized persons or without a demonstration of necessity, (2) coordinate the California record security program with interstate systems for the exchange of such information, and (3) undertake a continuing educational program of all authorized personnel

---

[15]The latter limitations are two-fold. First, the agency or officer must be authorized by statute or by resolution of a local governing board to have access to the criminal record information (subds. (b)(10) & (12)); agencies and officers of the state are, however, deemed to be so authorized (subd. (b)(9)). Second, in all such cases the information must be "required" to implement a statute or regulation which "expressly" refers to "specific" criminal conduct of the subject of the record and contains requirements or exclusions or both that are "expressly" based on such conduct. (Subds. (b)(9), (10) & (12).)

[16]For example, the category includes those officials who are technically designated as "peace officers" but do not perform traditional law enforcement functions, such as university police, airport security officers, and health and safety investigators. (Subd. (c)(2).) According to guidelines prepared by the Department of Justice, criminal record information may be released to such officials only if the subject of their inquiry is under arrest or under criminal investigation, or is seeking employment as a peace officer.

[17]The sections refer to records compiled at the state level by the Attorney General. (§ 11140, subd. (a).) Essentially identical legislation has been enacted penalizing unauthorized dissemination of records compiled by local law enforcement agencies. (§§ 13301-13304, eff. July 1, 1978.)

in the proper use and control of such information. In response the Attorney General created the Criminal Records Security Unit of the Department of Justice, which has promulgated regulations implementing Penal Code sections 11075-11081 (Cal. Admin. Code, tit. 11, ch. 1, subch. 7) and conducts repeated training sessions in records security for both state and local agencies. In addition, the Department of Justice has prepared a preliminary plan for compliance with recent federal regulations governing the collection, storage, and dissemination of criminal record information. (28 C.F.R. ch. 1, pt. 20.)

*Sixth.* The Legislature has moved vigorously to prevent criminal record information from being improperly used as a basis for denying the former arrestee opportunities for personal advancement. These efforts are variously phrased. Among the statutes we have discussed herein, for example, Penal Code section 1000.5 prescribes that the record of a narcotics arrest resulting in successful completion of a diversion program shall not, without the divertee's consent, "be used in any way which could result in the denial of any employment, benefit, license, or certificate."

Simultaneously with these particularized enactments, the Legislature has mounted a broader attack on the problem on two fronts. First, it has prohibited the prior practice whereby state and local agencies denied or revoked a business or professional license on the ground that a record of arrest or conviction demonstrated a lack of "good moral character." Chapter 1321 of the Statutes of 1974 substantially rewrote the provisions of law governing denial, suspension, and revocation of such licenses. (Bus. & Prof. Code, div. 1.5.) A license cannot now be denied or revoked because of a lack of "good moral character" or on any similar ground relating to the applicant's reputation. (Bus. & Prof. Code, § 475, subd. (c).) Indeed, even a conviction can no longer support a denial or revocation of a license unless the crime is "substantially related to the qualifications, functions or duties of the business or profession" in question. (Bus. & Prof. Code, §§ 480, subd. (a), & 490.)

To implement the prohibition against denial of license because of an arrest record, the Legislature thereafter decreed that no public agency may "ask . . . or require" on an initial application form that the applicant reveal any record of arrest not resulting in conviction. (Bus. & Prof. Code, § 461.) The section governs applications for "any license, certificate or registration provided for by any law of this state or local government," and a violation of its command is punishable as a misdemeanor.

Next, in Labor Code section 432.7 the Legislature extended this technique of prohibiting any inquiry into an applicant's arrest record from the field of public licensing to the even wider field of public *and private* employment. Substantially rewritten in 1975, section 432.7 now declares that "No employer whether a public agency or private individual or corporation shall ask an applicant for employment to disclose, through any written form or verbally, information concerning an arrest or detention which did not result in conviction . . . ." Supplementing this rule, the statute further forbids any employer (1) to "seek" any such record of arrest "from any source whatsoever," and (2) to "utilize" such a record "as a factor in determining any condition of employment including hiring, promotion, termination, or any apprenticeship training program or any other training program leading to employment . . . ." (Subd. (a).)[18]

Various penalties are provided for violation of section 432.7. If an employer unintentionally contravenes its terms, the applicant may bring a civil action against him to recover his actual damages or $200, whichever is greater, together with costs and attorney's fees; an intentional violation entitles the applicant to treble damages or $500, whichever is greater, plus costs and attorney's fees. (Subd. (b).) In the latter event the employer is also guilty of a misdemeanor. (*Ibid.*) And it is again declared illegal to knowingly disclose such information to unauthorized persons "with intent to affect a person's employment," and for unauthorized persons to "receive or possess" such information. (Subd. (f).)[19]

Fourteen years ago, in the only prior reported California decision directly in point, the Court of Appeal rejected an arrestee's demand for return or destruction of booking photographs and fingerprints after a

---

[18]The statute is inapplicable to persons seeking employment as peace officers (subd. (d)), and applies only in part to prospective employees of a health facility (subd. (e)).

A parallel provision forbids an automobile liability insurer to ask an applicant for such insurance whether he has been arrested for any Vehicle Code violation not resulting in conviction. (Ins. Code, § 11580.08.)

[19]Finally, both of the foregoing revisions of the law governing the use of arrest records in licensing and employment are expressly incorporated by reference in the current version of section 11105, the general statute restricting dissemination of criminal record information. Subdivisions (b) and (c) of that statute each provide that "when information is furnished to assist an agency, officer, or official of state or local government, a public utility, or any entity, in fulfilling employment, certification, or licensing duties, the provisions of Chapter 1321 of the Statutes of 1974 and of Section 432.7 of the Labor Code shall apply . . . ." (See also § 13300, subds. (b) & (c), eff. July 1, 1978.)

misdemeanor charge against her had been dismissed without conviction. (*Sterling* v. *City of Oakland* (1962) *supra,* 208 Cal.App.2d 1.) The court reasoned that regulation of the use and abuse of arrest records was primarily a matter for the Legislature, and found no statute authorizing the relief requested. (*Id.,* at pp. 6-7.) The court's view of the primacy of the legislative branch in this respect has been reiterated in a number of our sister jurisdictions,[20] and we adopt it here.

Plaintiff emphasizes that since the date of *Sterling* the right of privacy has been accorded increasing recognition, a process culminating in its adoption into our Constitution in 1972. But the Legislature has kept pace with this development. Statutes governing arrest records were scarce at the time of *Sterling,* as the court pointed out; yet in recent years, as we have seen, that scarcity has been remedied by an elaborate structure of complementary and interlocking enactments on the topic.

We are mindful that some gaps in the structure may still appear. Thus plaintiff contends that the absence of a provision for expungement in his case is just such an oversight. But legislative history strongly suggests the omission was deliberate.[21] In these circumstances we should defer to the implied determination of the lawmakers that the compelling state interests identified hereinabove outweigh the speculative significance of a dismissal "for lack of prosecution," a disposition which may be predicated on many grounds other than factual innocence.

Indeed, even if the absence of an expungement provision in this connection were unintentional, we should nevertheless allow the Legislature to address in the first instance the difficult task of striking the proper balance between these competing concerns. There is no reason to believe that task will long go unfilled, as the Legislature has demonstrated a continuing desire and ability to fashion statutory responses to legitimate demands for privacy of the arrestee. In either event, therefore, judicial intervention is unwarranted.

---

[20]See, expressly or by implication, each of the cases cited in footnote 24, *infra.*

[21]As introduced on January 28, 1975, the bill which ultimately enacted Penal Code section 851.8 (Sen. Bill No. 299, § 1) provided for mandatory sealing of arrest records in all cases in which the defendant was released without charge for insufficient evidence, or the charge was dismissed—i.e., for any reason—without a conviction, or he was acquitted. An amendment to the bill on May 12, 1975, however, conditioned such relief on specific findings by the court that the interests of justice require sealing and there is not a preponderance of evidence establishing the defendant's guilt. Finally, an amendment to the bill on May 29, 1975, deleted the foregoing provisions in their entirety and substituted the present scheme of permitting sealing only in cases in which the defendant is acquitted and it appears to the judge that he was "factually innocent."

We need not lengthen this opinion by discussing each of the authorities relied on by plaintiff. Some are distinguishable because they arise in jurisdictions which lack a body of protective legislation such as California now enjoys,[22] while others additionally involve wholesale arrests of unpopular groups for purposes of harassment—clearly not a lawful state interest.[23] On the other hand, since the date of *Sterling* numerous state and federal courts have reaffirmed the rule that limited retention and dissemination of arrest records does not violate the right of privacy.[24] For the reasons stated herein, we join those jurisdictions and hold that the trial court properly denied the relief requested.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

---

[22]See, e.g., *Menard* v. *Saxbe* (D.C.Cir. 1974) 498 F.2d 1017 [162 App.D.C. 284]; *Menard* v. *Mitchell* (D.C.Cir. 1970) 430 F.2d 486 [139 App.D.C. 113]; *Kowall* v. *United States* (W.D.Mich. 1971) 53 F.R.D. 211; *United States* v. *Kalish* (D.P.R. 1967) 271 F.Supp. 968; *Davidson* v. *Dill* (1972) 180 Col. 123 [503 P.2d 157]; *Eddy* v. *Moore* (1971) 5 Wash.App. 334 [487 P.2d 211, 46 A.L.R.3d 889]; but see *Monroe* v. *Tielsch* (1974) 84 Wn.2d 217 [525 P.2d 250]. The distinction was recognized by a New York court: "Whereas other jurisdictions were without legislative pronouncements in this area and judicial determination therefore made possible [citing Davidson v. Dill], our legislature has mandated what relief may be granted to persons in petitioner's position." (*In re Foster* (1973) 72 Misc.2d 1029 [340 N.Y.S.2d 758, 760].)

[23]See, e.g., *United States* v. *McLeod* (5th Cir. 1967) 385 F.2d 734, 750 (civil rights workers); *Wilson* v. *Webster* (9th Cir. 1972) 467 F.2d 1282, 1283-1284) (same) (dictum); *Wheeler* v. *Goodman* (W.D.N.C. 1969) 306 F.Supp. 58, 65-66, vacated on other grounds, 401 U.S. 987 [28 L.Ed.2d 524, 91 S.Ct. 1219] (hippies); *Hughes* v. *Rizzo* (E.D.Pa. 1968) 282 F.Supp. 881, 885 (same); *Sullivan* v. *Murphy* (D.C.Cir. 1973) 478 F.2d 938, 968-973, on remand see *Sullivan* v. *Murphy* (D.D.C. 1974) 380 F.Supp. 867 (political demonstrators); *Bilick* v. *Dudley* (S.D.N.Y. 1973) 356 F.Supp. 945, 950-953 (political meeting).

[24]See, e.g., *United States* v. *Linn* (10th Cir. 1975) 513 F.2d 925; *Herschel* v. *Dyra* (7th Cir. 1966) 365 F.2d 17; *United States* v. *Seasholtz* (N.D.Okla. 1974) 376 F.Supp. 1288; *United States* v. *Dooley* (E.D.Pa. 1973) 364 F.Supp. 75; *United States* v. *Rosen* (S.D.N.Y. 1972) 343 F.Supp. 804; *Beasley* v. *Glenn* (1974) 110 Ariz. 438 [520 P.2d 310]; *Walker* v. *Lamb* (Del.Ch. 1969) 254 A.2d 265, affd. per curiam (Del. 1969) 259 A.2d 663; *Spock* v. *District of Columbia* (D.C.Mun.App. 1971) 283 A.2d 14; *Purdy* v. *Mulkey* (Fla.App. 1969) 228 So.2d 132; *People* v. *Lewerenz* (1963) 42 Ill.App.2d 410 [192 N.E.2d 401]; *Application of Raynor* (1973) 123 N.J.Super. 526 [303 A.2d 896]; *In re Foster* (County Ct. 1973) *supra,* 340 N.Y.S.2d 758; *Statman* v. *Kelly* (1965) 47 Misc.2d 294 [262 N.Y.S.2d 799], affd. per curiam (App.Div. 1965) 264 N.Y.S.2d 1008; *State* v. *Bellar* (1972) 16 N.C.App. 339 [192 S.E.2d 86].

There is apparently no right of privacy in arrest records under the federal Constitution. (*Paul* v. *Davis* (1976) 424 U.S. 693 [47 L.Ed.2d 405, 96 S.Ct. 1155].)