TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| | : | |
| OPINION | : | |
| | : | No. 22-1201 |
| of | : | |
| | : | November 9, 2023 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| SUSAN DUNCAN LEE | : | |
| Deputy Attorney General | : | |

The HONORABLE BILL DODD, MEMBER OF THE STATE SENATE, has requested an opinion on a question relating to the sale of California wine to customers in another state.

**QUESTION PRESENTED AND CONCLUSION**

California wineries applying for a direct shipper license in another state are often required—pursuant to the other state's alcohol control statutory or regulatory scheme—to provide a criminal record check in connection with that application. If a California winery owner or manager obtains their own criminal record check from the California Department of Justice, would furnishing that criminal record check—or a notification reflecting that no such record exists—to another state's alcohol control agency violate California Penal Code sections 11125, 11142, or 11143?

If a California winery owner or manager furnishes their criminal record—or notification no such record exists—to another state's alcohol control agency, that would constitute a violation of California Penal Code sections 11125, 11142, or 11143. However, if the other state's alcohol control agency obtains authorization from the California Department of Justice to receive California state summary criminal information, then the other state's agency may request and receive the criminal

1

22-1201

background information directly from the California Department of Justice as specified in Penal Code section 11105.

## BACKGROUND

California is renowned as home to some of the best wine regions in the world. Wine drinkers around the country purchase wine from California, and vintners stand ready to provide. In some cases, however, another state's statutory scheme governing alcohol control does not coordinate easily with California's criminal justice information statutes, creating obstacles for California wineries that are trying to obtain a license to sell wine to consumers in that state.

We have been asked for our opinion on whether California law governing disclosure of criminal history information prevents California wineries from complying with the laws of another state, with Missouri proffered as the primary example.[1] Ultimately, the focus of our analysis and conclusion is on interpreting the relevant California statutes governing the distribution of California criminal record information. In order to understand the issues, however, it is helpful to have a general understanding of Missouri's alcohol control scheme.

### Missouri's Three-Tier Alcohol Control System

Missouri's Liquor Control Law establishes a system for regulating the manufacture, distribution, and sale of alcoholic beverages in Missouri.[2] The so-called "three-tier system" is designed to keep the three levels—manufacture, wholesale, and retail—separate and distinct from each other. Under such a system, an alcohol manufacturer may sell only to a wholesaler, a wholesaler may sell only to a retailer, and a retailer may sell only to a consumer. The three-tier system requires separate licenses for manufacturers, wholesalers, and retailers, and generally prohibits manufacturers and wholesalers from having a financial interest in the retail sale of alcohol. The three-tier system was designed to protect against the "tied-house" system, in which alcohol manufacturers monopolized the industry from production to consumption, and which was widely blamed for much of the social damage that led to Prohibition.[3] Missouri's system

---

[1] We received a comment letter from The Wine Institute citing Arizona and South Carolina as other states where fingerprint and background check requirements have raised issues for California wineries. (Tyler Rudd, Wine Institute, letter to Attorney General's Office, May 18, 2023.)

[2] Mo. Rev. Stats., § 311.010 ("This law may be cited as the 'Liquor Control Law'"); see generally Mo. Rev. Stats., ch. 311.

[3] *Sarasota Wine Market, LLC v. Schmitt* (8th Cir. 2021) 987 F.3d 1171, 1175-1176 (*Sarasota Wine Market*).

is also intended to guard against anti-competitive and monopolistic practices, foster stability in Missouri's alcoholic beverage industry, and provide for the orderly collection of state alcohol taxes.[4]

Missouri's Division of Alcohol and Tobacco Control (ATC) is a branch of Missouri's Department of Public Safety. The Division issues licenses upon application to individuals and entities, thereby authorizing their participation in the manufacture, distribution, or sale of alcoholic beverages. Historically, one of the qualifications for obtaining such a license has been residence in Missouri. The individual licensee, or a corporate licensee's "managing partner," must be a "qualified legal voter" and "taxpaying citizen of the county, town, city, or village" in Missouri.[5] The Supreme Court of the United States has held that similar three-tiered systems are "unquestionably legitimate."[6] Likewise, residence requirements that are "essential elements of the three-tiered system" have been upheld in the Eighth Circuit against challenges under the dormant Commerce Clause and the Privileges and Immunities Clause.[7]

Starting in 2007, the State of Missouri has allowed out-of-state wine manufacturers to ship wine directly to Missouri residents of legal drinking age.[8] To engage in such direct sales, an out-of-state winery must apply to the Missouri ATC for a "Wine Direct Shipper License."[9] Missouri requires out-of-state wine sellers to provide a criminal record from their home state as evidence of "good moral character" in order to qualify for a license to sell to customers in Missouri. Background checks are required for

---

[4] Mo. Rev. Stats., § 311.015 (purposes of Liquor Control Law include "to promote responsible consumption, combat illegal underage drinking, and achieve other important state policy goals such as maintaining an orderly marketplace composed of state-licensed alcohol producers, importers, distributors, and retailers."); see https://atc.dps.mo.gov/about/history.php (as of Nov. 8, 2023); see also Mo. Rev. Stats., § 311.105 (purposes of Liquor Control Law).

[5] Mo. Rev. Stats., § 311.060.

[6] *Granholm v. Heald* (2005) 544 U.S. 460, 489 (Michigan and New York alcohol laws).

[7] *Sarasota Wine Market*, *supra*, 987 F.3d 1171 (upholding Missouri residency and physical presence requirements for retail liquor license under both dormant Commerce Clause and Privileges and Immunities Clause).

[8] See Mo. Rev. Stats., § 311.185 (requirements for out-of-state license to ship wine to Missouri residents).

[9] See *id.* at § 311.210 (license procedures).

owners, managing officers, directors, and all persons controlling 10 percent or more of the winery.[10]

California law provides that a person may request a copy of their criminal record (or a statement that no such record exists) by applying to the California Department of Justice.[11]  Penal Code section 11121 states:

> It is the function and intent of this article[12] to afford persons concerning whom a record is maintained in the files of the bureau an opportunity to obtain a copy of the record compiled from such files, and to refute any erroneous or inaccurate information contained therein.

To obtain any alcohol license in Missouri, a person must be "of good moral character."[13]  In furtherance of this requirement, the Missouri ATC's "Checklist of Requirements for Wine Direct Shipper License"[14] specifies that an applicant must submit "*a criminal record check issued by* the Missouri State Highway Patrol Criminal Records Division (Missouri residents) or *the applicable state records division of residency for non-Missourians*."[15]

In California, the "applicable state records division" is the California Department of Justice (DOJ), which maintains criminal record information for the state.[16]  A person in California may apply to the DOJ for a copy of their own criminal record (or a notice

---

[10] The application form containing this requirement may be found at https://atc.dps.mo.gov/documents/Wine-Direct-Shipper-Application.pdf (as of Nov. 8, 2023).

[11] For purposes of readability, we use the term "criminal record" as shorthand for "state summary criminal information" as used in Penal Code section 11105; see Pen. Code, § 11140, subd. (a) ("Record" means the state summary criminal history information as defined in subdivision (a) of Section 11105, or a copy thereof, maintained under a person's name by the Department of Justice.)  This opinion does not apply to a criminal record of any other description.

[12] Pen. Code, pt. 4, tit. 1, ch. 1, art. 5 (§§ 11120-11127), titled Examination of Records.

[13] Mo. Rev. Stats., § 311.060.1.

[14] The form is available at https://atc.dps.mo.gov/documents/forms/MO_829-A0141.pdf (as of Nov. 8, 2023).

[15] Italics added.

[16] Pen. Code, § 11105, subd. (a)(1).

22-1201

that no such record exists) for the purpose of reviewing the record and refuting any erroneous or inaccurate information in it.[17] Penal Code section 11124 states:

> When an application is received by the department, the department shall determine whether a record pertaining to the applicant is maintained. If such record is maintained, the department shall furnish a copy of the record to the applicant or to an individual designated by the applicant. If no such record is maintained, the department shall so notify the applicant or an individual designated by the applicant. Delivery of the copy of the record, or notice of no record, may be by mail or other appropriate means agreed to by the applicant and the department.

So far, so good. A person in California, including a winery owner or manager, may obtain a copy of their criminal record from the DOJ.[18] But here an obstacle arises: Although a person in California may obtain a copy of their criminal record for their own personal purposes, they are not at liberty to share it with just anyone—and cannot use it to complete the application for a license to sell wine to customers in Missouri—because California law restricts the distribution of state summary criminal information.

Specifically, Penal Code sections 11125, 11142 and 11143 make it a misdemeanor for a person to furnish a criminal record to anyone who is not authorized by law to receive it.

Penal Code section 11142 states:

> Any person authorized by law to receive a record or information obtained from a record who knowingly furnishes the record or information to a person who is not authorized by law to receive the record or information is guilty of a misdemeanor.

Penal Code section 11143 states:

> Any person, except those specifically referred to in Section 1070 of the Evidence Code, who, knowing he is not authorized by law to receive a record or information obtained from a record, knowingly buys, receives, or possesses the record or information is guilty of a misdemeanor.[19]

---

[17] Pen. Code, § 11121.

[18] California wineries must obtain two criminal background checks—one for a federal permit from the Alcohol and Tobacco Tax and Trade Bureau, and one from the California Alcoholic Beverage Control—to open and operate a winery in California.

[19] Evidence Code section 1070 refers to professional reporters refusing to disclose their news sources.

5

Furthermore, it is a misdemeanor in California for a person (or agency) even to ask another person to furnish their criminal record. Penal Code section 11125 states:

> No person or agency shall require or request another person to furnish a copy of a record or notification that a record exists or does not exist, as provided in Section 11124. A violation of this section is a misdemeanor.

As these statutes demonstrate, distribution of criminal records is strictly limited in California to "authorized" recipients.[20] These rules apply even if a person is furnishing their *own* criminal record to an unauthorized person, or for an unauthorized purpose.[21]

The question we need to resolve is whether there is any provision of California law under which the Missouri ATC may be authorized to receive California criminal records for purposes of licensing direct wine sales. For these purposes, an "authorized" person means "any person or public agency authorized by a court, statute, or decisional law to receive a record."[22] There is no court order at issue here, and there is no decisional law on point to resolve our question. We therefore examine the relevant statutes to determine who may be "authorized" to receive a criminal background record, and whether the Missouri ATC may be so authorized.

---

[20] See also Pen. Code, § 11076 ("Criminal offender record information shall be disseminated, whether directly or through any intermediary, only to such agencies as are, or may subsequently be, authorized to access such records by statute.")

[21] See *Loder v. Municipal Court* (1976) 17 Cal.3d 859, 872-873; 105 Ops.Cal.Atty.Gen. 157, 159 (2022).

[22] Pen. Code, § 11140, subd. (b). Section 11140 states in full:

> As used in this article:
>
> (a) "Record" means the state summary criminal history information as defined in subdivision (a) of Section 11105, or a copy thereof, maintained under a person's name by the Department of Justice.
>
> (b) "A person authorized by law to receive a record" means any person or public agency authorized by a court, statute, or decisional law to receive a record.

"This article" refers to Penal Code part 4, title 1, chapter 1, article 6 (§§ 11140-11144), titled Unlawful Furnishing of State Summary Criminal History Information.

**ANALYSIS**

Our goal in interpreting statutes is to determine the Legislature's intent so as to give effect to the law's purpose.[23] To do so, we "look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose."[24] We do not consider the words of statutes in isolation. Instead, "we construe the words in question in context, keeping in mind the statutes' nature and purposes."[25] If the plain text of a statute is ambiguous, or subject to more than one reasonable interpretation, "then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history."[26] The "historical circumstances of a law's enactment may also assist in ascertaining legislative intent, supplying context for otherwise ambiguous language."[27]

The focus of our attention here is Penal Code section 11105, a compendious statute that lists some 38 categories of permissible recipients of criminal records. Recipients are divided into two general categories: those that are authorized to receive California criminal records as a matter of law, and those that may be permitted to receive such records upon application to and approval by the DOJ. Subdivision (b) lists entities that are entitled to receive California criminal records, including the various participants in California's criminal justice system—courts, peace officers, prosecutors, defense counsel, probation and parole officers, and correctional institutions.[28] Subdivision (b) also encompasses a number of other positions of public trust, including child support and child welfare officers (both county and tribal),[29] investigators for guardianships and

---

[23] See *Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 14 (*Skidgel*).

[24] *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387.

[25] *Skidgel*, *supra*, 12 Cal.5th at 14.

[26] *Ibid.*

[27] *Kaanaana v. Barrett Bus. Servs., Inc.* (2021) 11 Cal.5th 158, 169.

[28] Pen. Code, § 11105, subds. (b)(1)-(b)(8), (b)(14); see subd. (c)(2) ("peace officer of the state other than those included in subdivision (b)").

[29] *Id.*, subds. (b)(17)-(b)(20).

22-1201

conservatorships,[30] health officers,[31] humane societies and officers, and state positions whose duties include having access to federal income tax information.[32]

In contrast to subdivision (b), which lists entities that are *entitled* to receive state criminal information, subdivision (c) addresses entities that are *permitted to apply* to the DOJ for authorization, including cities, counties, local districts, tribes, and the courts and peace officers "of the United States, other states, or territories or possessions of the United States."[33]  Among the permitted categories we find one—subdivision (c)(5)—that seems to us capable of including a licensing agency of another state, such as the Missouri ATC.  Subdivision (c)(5) states, in full:

> (c) The Attorney General may furnish state summary criminal history information and, when specifically authorized by this subdivision, federal-level criminal history information upon a showing of a compelling need to any of the following, provided that when information is furnished to assist an agency, officer, or official of state or local government, a public utility, or any other entity in fulfilling employment, certification, *or licensing duties*, Chapter 1321 of the Statutes of 1974 and Section 432.7 of the Labor Code shall apply:
>
> . . .
>
> (5) *Public officers, other than peace officers, of* the United States, *other states*, or possessions or territories of the United States, *provided that access to records similar to state summary criminal history information is expressly authorized by a statute of the* United States, *other states*, or possessions or territories of the United States *if the information is needed for the performance of their official duties.*[34]

Reviewing this statute, we believe that it presents a path for another state's alcohol licensing bureau to request and obtain authorization from the DOJ to receive directly from the DOJ the state summary criminal information of a California applicant.  In

---

[30] *Id.*, subds. (b)(21)-(b)(23).

[31] *Id.*, subd. (b)(14); see *id.* at subd. (c)(3) (illegal dumping enforcement officer).

[32] *Id.*, subds. (b)(16), (b)(24); see Gov. Code, § 1044 (background checks of persons having access to federal tax information).

[33] *Id.*, subds. (c)(7), (c)(8); see *id.,* subd. (c)(4).

[34] Italics added.  See Stats. 1974, ch. 1321, amending Bus. & Prof. Code, § 491 (notices to ex-licensee upon suspension of license); Lab. Code, § 432.7 (non-disclosure of records of arrests not resulting in conviction).

subdivision (c) proper, we find that the Attorney General may grant permission for certain agencies to receive criminal information when the agency is "fulfilling employment, certification, or licensing duties . . . ." In subsection (5) of subdivision (c), we find a qualified authorization for "public officers, other than peace officers . . . of other states . . ."[35] Missouri's ATC, and specifically its licensing officers, appear to fall within the category of "public officers, other than peace officers" of another state. Subsection 5 authorizes such an officer to receive criminal records from California if two conditions are fulfilled: first, that "access to records similar to state summary criminal history information is expressly authorized by a statute" of the other state; and second, that "the information is needed for the performance of their official duties."

Turning to Missouri's Liquor Control Law, it appears likely that both elements could be satisfied. First, Missouri law expressly authorizes the Supervisor of the Missouri ATC to access criminal records for the purpose of conducting background checks.[36] Second, Missouri law invests the Supervisor of the Missouri ATC with plenary power to issue or withhold licenses to sell alcohol in Missouri.[37] Thus, if the Supervisor seeks a criminal background record from California for the purpose of evaluating a license application in Missouri, it seems fair to say that the record "is needed for the performance of [the Supervisor's] official duties." Since it appears possible for both conditions to be satisfied, we conclude that California law provides at least one potential legal route by which Missouri ATC might become authorized to receive criminal background records. But unless that route is followed, providing a criminal record to Missouri ATC for a license background check would be a misdemeanor.[38]

---

[35] Missouri's authorization to obtain criminal records for purposes of criminal law enforcement and investigations is not in question here. We are concerned here only with the licensing function of the Missouri ATC.

[36] Mo. Rev. Stats., § 43.543, states, in relevant part:

> Any state agency listed in Section 621.045 . . . shall submit fingerprints to the Missouri State Highway Patrol, Missouri criminal records repository, for the person's criminal history under Section 43.450.

See Mo. Rev. Stats., § 621.045 (listing "Supervisor of Liquor Control"); Mo. Rev. Stats., § 43.450 (criminal record review, qualified entities).

[37] Mo. Rev. Stats., §§ 311.120, 311.230, 311.610 (licensing power lies in Supervisor of Missouri ATC).

[38] Accordingly, we reject any suggestion that providing such information is permissible *without DOJ authorization*. For example, it has been suggested that, as the Missouri Highway Patrol is the repository for criminal records in Missouri, it could be authorized to receive criminal background information for out-of-state applicants on behalf of the

22-1201

In reaching this legal conclusion, we emphasize that we do not prejudge the outcome of any future application, by Missouri or any other state or entity, for authorization under Penal Code section 11105(c)(5).[39] Every application is evaluated on its own legal and factual merits by DOJ's California Justice Information Services Division, Bureau of Criminal Information and Analysis. Our authority is confined to evaluating the purely legal aspects of the question before us.[40]

For the reasons stated, we conclude that a license applicant may not supply their own criminal background information to a licensing agency. If a California winery owner or manager furnishes their criminal record—or notification no such record exists—to another state's alcohol control agency, that would constitute a violation of California Penal Code sections 11125, 11142, or 11143. However, if the other state's alcohol control agency obtains authorization from California DOJ to receive California state summary criminal information, then the other state's agency may request and

---

Missouri ATC. However, we are informed that the Missouri ATC does not have a procedure in place that would allow applicants residing outside Missouri who need a background check to submit ink or electronic fingerprint images to the Missouri State Highway Patrol. Alternatively, it has also been suggested that language in Penal Code section 11124 ("department shall furnish a copy of the record to the applicant *or to an individual designated by the applicant*") permits a California resident to provide their own record to anyone they wish. But the quoted language applies only to Article 5, Examination of Records, the purpose of which is "to afford persons concerning whom a record is maintained in the files of the bureau an opportunity to obtain a copy of the record compiled from such files, and to refute any erroneous or inaccurate information contained therein."[38] In that context, it makes sense to permit a person to designate a lawyer, spouse, guardian, or other personal representative to receive and review the record. But that personal purpose is manifestly not a general license to comply with the illegal request of an employing, licensing, or other entity for a California resident's criminal records. To interpret it as such would grossly undermine the careful protections that the California Legislature has constructed around the distribution of criminal records, as demonstrated by Penal Code sections 11105, 11125, 11142, and 11143.

[39] Missouri ATC informed us that it applied for and was denied authorization to receive criminal records from California in December 2022. (Benjamin Kweskin, General Counsel, Missouri ATC, May 19, 2023.) Our review of that application and the response disclose that the application was made under a different subdivision of Penal Code section 11105, and denied on that basis. Nothing in the first application and denial would foreclose consideration of a new application on new facts or on a different legal basis.

[40] See Gov. Code, § 12519 (Attorney General to give opinions on "questions of law").

22-1201

receive the criminal background information directly from the California DOJ as specified in Penal Code section 11105.[41]

---

[41] Even where another state's agency has obtained DOJ authorization to receive California state summary criminal information, Penal Code section 11105 only permits the California DOJ, not individual applicants, to furnish such information.

22-1201