[Nos. F006159, F006183. Fifth Dist. Mar. 13, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
LEOPOLDO ABALOS SANCHEZ, Defendant and Appellant.

[No. F006244. Fifth Dist. Mar. 13, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DOMINGO CASTILLO, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Frieda Jo Owings and Frank Offen, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Roger E. Venturi and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MARTIN, J.—**

### APPELLANT SANCHEZ

On August 5, 1985, information No. 209002 was filed in the Stanislaus County Superior Court charging appellant Sanchez with a violation of section 11352 of the California Health and Safety Code,[1] the sale of heroin on or about July 5, 1985.

On that date, Sanchez withdrew his plea of not guilty and entered a plea of guilty to two counts of violation of section 11352 which had been separately charged in superior court case No. 208979. The negotiated plea contemplated appellant Sanchez enter a plea of guilty to count I in the case then undergoing preliminary examination, No. 208979, and the People would move to dismiss count II. Appellant Sanchez would also enter a plea of guilty to the section 11352 violation alleged in information No. 209002 in exchange for a recommendation from the prosecution that punishment for the two counts run concurrently. Additionally, there was apparently a third case, as yet unfiled, which the prosecution agreed to dismiss after entry of the above-stated guilty plea. Appellant Sanchez was then advised of his rights as to both cases and entered his pleas of guilty. The cases were then certified to superior court.

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

On September 4, 1985, the sentencing court denied appellant Sanchez probation and sentenced him to prison for the middle term of four years and awarded the appropriate time credits.

Appellant Sanchez filed timely notices of appeal in each of his cases. Upon motion of appellant Sanchez to consolidate the appeals, these two cases were ordered consolidated on January 15, 1986.

APPELLANT CASTILLO

On August 22, 1985, a two-count complaint was filed in the Tulare County Municipal Court charging appellant Castillo and codefendant Felicitis Tejada of violating section 11352. Count I charged appellant with sale of heroin and count II charged appellant with the sale of cocaine, both offenses occurring on August 20, 1985.

On September 3, 1985, Castillo, pursuant to a plea bargain, entered a plea of guilty to a violation of section 11351, possession of heroin for sale.

On October 1, 1985, the sentencing court denied appellant Castillo probation and sentenced him to state prison for the medium term of two years. Appellant Castillo filed a timely notice of appeal.

Upon this court's own motion, the appeals of appellants Sanchez and Castillo were ordered consolidated for a determination of all appellate issues raised therein on September 5, 1986.

Since both appellants' convictions are predicated upon pleas of guilty, no facts relating to the crimes will be set forth except as they become relevant in the course of the subsequent discussions.

DISCUSSION

I. FEDERAL AND STATE GUARANTIES OF EQUAL PROTECTION AND DUE PROCESS

Both appellants contend the trial court's denial of probation due to their respective status as an illegal alien violated their federal and state guaranties of equal protection and due process. Both appellants argue classification based on alienage is subject to strict scrutiny.

■ The United States Supreme Court held illegal aliens may claim the benefit of the Fourteenth Amendment's guaranty of equal protection (*Plyler*

v. *Doe* (1982) 457 U.S. 202, 215 [72 L.Ed.2d 786, 798, 102 S.Ct. 2382].) In *Graham* v. *Richardson* (1971) 403 U.S. 365 [29 L.Ed.2d 534, 91 S.Ct. 1848], the high court held that a state could not deny welfare benefits to *lawfully resident* aliens. That court's decisions have "established that classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny. Aliens as a class are a prime example of a 'discrete and insular' minority [citation] for whom such heightened judicial solicitude is appropriate." (*Id.* at pp. 371-372, fns. omitted [29 L.Ed.2d at pp. 541-542].) ■ *Alonso* v. *State of California* (1975) 50 Cal.App.3d 242 [123 Cal.Rtpr. 536, 87 A.L.R.3d 678], distinguished between cases involving "lawfully resident" aliens and aliens unlawfully in this country. The Second District Court of Appeal determined that "[i]f an alien is here *unlawfully,* he has no rights under the Constitution of the United States to equal opportunity of employment as enjoyed by lawfully resident aliens [citations] and has no right to work." (*Id.* at p. 248.)

■ The equal protection clause directs that "all persons similarly circumstanced shall be treated alike." (*Royster Guano Co.* v. *Virginia* (1920) 253 U.S. 412, 415 [64 L.Ed.2d 989, 991, 40 S.Ct. 560].) However, the "Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." (*Tigner* v. *Texas* (1940) 310 U.S. 141, 147 [84 L.Ed. 1124, 1128, 60 S.Ct. 879, 130 A.L.R. 1321].) Despite appellants' contentions to the contrary, legal residents of the United States and illegal residents are not persons "similarly circumstanced" which the federal and state Constitutions require to be treated alike. In fact, while the Supreme Court held that children of illegal entrants could not be deprived of a free, basic education based on their parents' misconduct as to do so would not comport with fundamental conceptions of justice, the court further noted that "those who elect to enter our territory by stealth and in violation of our law should be prepared to bear the consequences, including, but not limited to, deportation." (*Plyler* v. *Doe, supra,* 457 U.S. 202, 220 [72 L.Ed.2d 786, 801].)

The distinction between illegal aliens and lawful residents is particularly marked when considered in terms of granting or denying probation. The *Plyler* court further noted, "undocumented status is not irrelevant to any proper legislative goal. Nor is undocumented status an absolutely immutable characteristic since it is the product of conscious, indeed unlawful, action." (*Ibid.*)

■ " 'Granting or denying probation rests in the sound discretion of the trial judge, and a heavy burden is imposed upon a defendant to show abuse of that discretion in denying a request for probation.' " (*People* v. *Goodson* (1978) 80 Cal.App.3d 290, 295 [145 Cal.Rptr. 489], quoting *People* v.

*Kingston* (1974) 44 Cal.App.3d 629, 637 [118 Cal.Rptr. 896].) California Rules of Court (hereinafter Rule), rule 414(d)(3) provides that a defendant's willingness and ability to comply with terms of probation shall be considered in a decision to grant or deny probation." Rule 414(d)(4) provides that a defendant's family background and ties are factors affecting eligibility for probation. The advisory committee comment to Rule 414 reads in part as follows: "The decision whether to grant probation is normally based on an overall evaluation of the likelihood that the defendant will live successfully in the general community. Each criterion points to evidence that the likelihood of success is great or small. A single criterion will rarely be determinative; in most cases, the sentencing judge will have to balance favorable and unfavorable facts.

"Under criterion (d)(3) ('willingness and ability') it is appropriate to consider the defendant's expressions of willingness to comply and their apparent sincerity, and whether the defendant's home and work environment and primary associates will be supportive of his efforts to comply with the terms of probation, among other factors." (See Advisory Com. Comment, 23 West's Cal. Codes Ann. Rules, pt. 1 (1981 ed.) rule 414, p. 673.)

■ In the instant case, in light of appellants' lack of ties with the community, the sentencing judges were concerned with appellants' "ability to comply with the terms of probation." (Rule 414(d)(3).) In our view, such concern is a legitimate factor to be weighed and considered by a sentencing court in determining whether or not to grant probation to an illegal alien.

Initially we note appellants' illegal alien, or undocumented alien, status was not disputed in the instant cases.[2] When dealing with an illegal or undocumented alien, the trial judge must assume, barring presentation of cognizable and credible evidence to the contrary, a defendant will be deported upon completion of any term of incarceration imposed, whether it be local time as a condition of probation or state prison, or upon his release from custody when no period of incarceration is imposed. ■ This is particularly true where a defendant is convicted of possession or sale of a controlled substance. As stated in *People* v. *Arciga* (1986) 182 Cal.App.3d 991, at page 1000 [227 Cal.Rptr. 611]: "Our state [L]egislature has recognized the important problem of narcotic abuse by illegal aliens and the need to cooperate with federal authorities: 'When there is reason to believe that any person arrested for violation of [certain uniform controlled substances sections] may not be a citizen of the United States, the arresting agency shall notify the appropriate agency of the United States having charge of deporta-

---

[2]In our view it is incumbent upon the defendant to dispute or deny illegal alien status and offer available evidence supporting his contention in an appropriate case. Otherwise, the trial judge will properly assume this fact is conceded by the defense.

tion matters.' (Health [&] Saf. Code, § 11369.)" (Fn. omitted.) ■ Moreover, in the typical case, an illegal alien will have at best limited ties to the general community and, upon deportation, such ties to the community as do exist will necessarily be terminated. Obviously, a convicted illegal alien felon, upon deportation, would be unable to comply with any terms and conditions of probation beyond the serving of any period of local incarceration imposed. These are legitimate factors for consideration by the trial judge in determining whether or not to grant probation in a particular case. We do not suggest illegal alien status should preclude the granting of probation. Rather, we conclude only that such fact may properly be considered by the sentencing court with all other relevant factors in exercising its discretion in this regard.

■ As previously stated, the illegal alien status of appellants Castillo and Sanchez was not denied or disputed in the instant case. Contrary to the respective appellants' assertions, the record in each case reflects that the trial judge's denial of probation was not predicated solely upon either appellant's illegal alien status but, rather, this factor was one of several factors weighed and considered by the trial court in reaching its sentence choice. In each case the court reviewed and considered the appellant's probation report and the sentence recommendation, invited comment from appellant's counsel, the prosecuting attorney and the deputy probation officer, and engaged in substantial discussion with counsel regarding sentencing options. As to appellant Castillo, the trial judge then stated:

"THE COURT: Mr. Pereira [defense counsel], I really do not feel that probation is appropriate in this case. This defendant is an undocumented alien. There is no way that he should be part of the probationary system.

"Also it appears to me this is not just a random occasional transaction, it appears to be a commercial type transaction, and I do not think that a period of local incarceration is called for here at all.

"Accordingly, the Court is going to deny probation in this case, and will order the defendant sentenced to serve the medium term in state prison." In sentencing appellant Sanchez, the trial judge stated:

"THE COURT: All right. I am going to find that the Defendant is not a suitable candidate for a grant of probation. The Defendant is apparently illegally in the United States and subject to deportation immediately upon release from custody. It would appear that that is the case and he's not accordingly in a position to respond appropriately to supervision by the Probation Officer.

"In addition, while the Defendant has no prior criminal record there are circumstances here that suggest at least that he has been involved in the sales of heroin more than simply the two transactions and I don't think that this under those circumstances would render him an amenable subject for probationary consideration. Probation under those circumstances will be ordered denied." Considering the record before us as to each appellant, it is clear the illegal alien status of Mr. Castillo and Mr. Sanchez was but one of several factors weighed and considered by the trial courts in denying probation.[3] In our view this was proper and did not constitute a denial of federal and/or California state guaranties of equal protection or due process.[4]

II., III.*

. . . . . . . . . . . . . . . . . . .

The judgments are affirmed.

Franson, Acting P. J., and Hamlin, J., concurred.

Petitions for a rehearing were denied April 13, 1987, and the opinion was modified to read as printed above. Appellants' petitions for review by the Supreme Court were denied June 25, 1987.

---

[3]Mr. Castillo further contends the sentencing court used an additional improper factor, i.e., this was a "commercial-type transaction," in denying probation, it being an element of the offense. However, when reviewing the entire record before us and considering the court's remarks in context, it is clear the lower court inartfully classified the subject transaction as other than a single, isolated, casual transaction between friends or acquaintances, but rather as one actively involved in the sale of heroin for profit. Furthermore, in light of our conclusion the lower court properly considered appellants' illegal alien status in denying probation, our decision is not in conflict with the principles enunciated in *People* v. *Bolton* (1979) 23 Cal.3d 208, 217 [152 Cal.Rptr. 141, 589 P.2d 396].

[4]We also considered and reject the contention the denial of probation in the instant cases violates 42 United States Code section 1981.

*See footnote on page 224, *ante.*