[No. D008403. Fourth Dist., Div. One. Mar. 12, 1990.]

AMERICAN G.I. FORUM et al., Plaintiffs and Appellants, v. EDWIN L. MILLER, JR., et al., Defendants and Respondents.

## COUNSEL

Betty Wheeler for Plaintiffs and Appellants.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace and Barbara Baird, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**KREMER, P. J.**—Plaintiffs American G.I. Forum, Harborview Community Council, Paul Jimenez, Janet W. MacNeill, and Kathryn B. Rix (together, American) appeal from a judgment dismissing their action after the court sustained the demurrer of defendants District Attorney Edwin L. Miller, Jr., and Automated Regional Justice Information System (together, ARJIS) to American's second amended complaint. American challenges ARJIS's creation and use of a standard arrest form on which an arresting law enforcement officer checks a box to indicate the arrestee is an "undocumented person." American contends this violates arrestees' rights to privacy, due process, and equal protection under the United States and California Constitutions as well as *Miranda* rights [*Miranda* v. *Arizona* (1966) 384 U.S. 436 (16 L.Ed. 694, 86 S.Ct. 1602, 10 A.L.R.3d 974)], and is an unauthorized use of public funds.[1] We conclude the trial court properly sustained ARJIS's demurrer to American's second amended complaint, and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Since this is an appeal from a dismissal following a general demurrer sustained, we accept as true the facts as alleged in plaintiffs' complaint.

---

[1] American does not argue the *Miranda* issue on appeal, including it only as a bare assertion. Therefore, it has waived the issue, and we will not discuss it further. (*Ford* v. *Superior Court* (1986) 188 Cal.App.3d 737, 742 [233 Cal.Rptr. 607].)

(*Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137].)

ARJIS created a standard arrest form, the ARJIS-8 form which an arresting officer fills with information about the incident resulting in the arrest and the person arrested. The ARJIS-8 form has a section devoted to statistical "identity" information which is entered into a nationwide computer system dealing with criminal activity. In this identity section is a check box to record whether the arrestee is an "undocumented person."

Police regularly ask about immigration status and check off the "undocumented person" box based on the arrestee's Hispanic appearance, command of English, and accent. The procedures for determining "undocumented person" status do not take into account the fact some people are United States citizens without knowing it, some "undocumented persons" are entitled to lawful resident status under the Immigration Reform and Control Act of 1986 and that the method for establishing that persons are not lawfully in the United States is a federal proceeding under the Immigration and Nationality Act. Thus, it is often impossible for police to determine the immigration status or citizenship of many persons, either by soliciting such information, inspecting identification, or by observation.

This collection of information can result in a false record that an arrestee is an undocumented person. Due to entry into a national computer system, this information can follow the arrestee throughout his life.

American sued ARJIS, seeking a declaration the above practices are unlawful and an injunction to remove the "undocumented person" check box from the ARJIS-8 form, prevent officers from inquiring into persons' immigration status, and delete all references made by ARJIS to arrestees' immigration status. The court sustained a demurrer to ARJIS's second amended complaint and, when American failed to amend, the court dismissed the action. American appeals.

DISCUSSION

I

*Right to Privacy Under the United States Constitution*

■ American alleges collecting and disseminating "undocumented person" information violates arrestees' rights to privacy under the United States Constitution.

While there is no explicit right to privacy in the Constitution, the United States Supreme Court has recognized "zones of privacy" created by more specific constitutional guaranties. (*Paul* v. *Davis* (1976) 424 U.S. 693, 712-713 [47 L.Ed.2d 405, 420-421, 96 S.Ct. 1155].) These zones include "marriage, procreation, contraception, family relationships, and child rearing and education" but have not been extended to dissemination of arrest information. (*Ibid.*)

In *Paul* v. *Davis, supra*, 424 U.S. 693, the plaintiff, Davis, was arrested for shoplifting. After his arrest but *without* his having been tried, police included his name and photograph in a flyer of "active shoplifters" distributed to local merchants. (*Id.* at pp. 695-696 [47 L.Ed.2d at pp. 410-411].) Davis claimed the flyer violated his right to privacy. (*Id.* at p. 712 [47 L.Ed.2d at p. 420].) The Supreme Court rejected his claim, concluding it was "far afield" from the spheres of privacy recognized by the court: "marriage, procreation, contraception, family relationships, and child rearing and education." (*Id.* at p. 713 [47 L.Ed.2d at pp. 420-421].)

Similarly, immigration status is far afield from the spheres of "marriage, procreation, contraception, family relationships, and child rearing and education." ARJIS does not, therefore, invade a sphere protected by the federal right of privacy by gathering "undocumented person" information in arrest records and disseminating those records in the criminal justice system. American's complaint does not state a cause of action for violation of the right to privacy under the United States Constitution.

II

*Right to Privacy Under the California Constitution*

■ American also alleges violation of arrestees' rights to privacy under the California Constitution.

■ The right of privacy under the California Constitution, which is explicitly guaranteed in section 1 of article I, is broader than the federal right of privacy. (*City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123, 130, fn. 3 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219].) Intervention into privacy must be justified by a compelling interest. (*White* v. *Davis* (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222].) ■ The California Supreme Court has held the uses to which arrest records are put constitute a compelling interest. (*Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 876 [132 Cal.Rptr. 464, 553 P.2d 624], cert. den. 429 U.S. 1109 [51 L.Ed.2d 562, 97 S.Ct. 1143].) These uses include correctly identifying arrestees and recording their vital statistics; publicly reporting the arrest;

using the arrest record in additional investigation; using the record in pretrial proceedings such as release on the arrestee's own recognizance; and post trial proceedings. (*Loder* v. *Municipal Court, supra*, at pp. 864-868.) The court recognized the risks of improper use of arrest records: principally, inaccurate or incomplete records, dissemination outside the criminal justice system, and use of records as a basis for denying former arrestees' personal advancement. (*Id.* at p. 868.) However, the court noted these risks are substantially mitigated by extensive governmental safeguards preventing improper dissemination, limiting dissemination within the criminal justice system, and enabling persons to inspect and correct their criminal records. (*Id.* at pp. 868-876.) Thus, disseminating arrest records within the criminal justice system does not violate the right to privacy. (*Id.* at p. 877.)

Here, there are compelling governmental interests in including "undocumented person" information in arrest records. Under California law, local law enforcement officers must notify the Immigration and Naturalization Service when they have reason to believe a person arrested for a drug offense is not a United States citizen. (Health & Saf. Code, § 11369.) Federal law contemplates that local police may report illegal aliens arrested for drug offenses to federal authorities. (8 U.S.C.A. § 1357(e).) Law enforcement officers may report all illegal alien arrestees to federal authorities. (67 Ops.Cal.Atty.Gen. 331 (1984).) Immigration status is relevant to release on the arrestee's own recognizance. (*Van Atta* v. *Scott* (1980) 27 Cal.3d 424, 438 [166 Cal.Rptr. 149, 613 P.2d 210].) Immigration status is also relevant to sentencing. (*People* v. *Sanchez* (1987) 190 Cal.App.3d 224, 230 [235 Cal.Rptr. 264].) These interests parallel those cited by the Supreme Court in justifying the dissemination of arrest records within the criminal justice system generally.

American raises concerns of inaccurate "undocumented person" information and its dissemination to arrestees' disadvantage. However, these are the very concerns which the *Loder* court held are outweighed by governmental interests and mitigated by legislative and administrative safeguards concerning the accuracy and dissemination of arrest records. (*Loder* v. *Municipal Court, supra*, 17 Cal.3d at pp. 868-876.) We also note the *Loder* court acknowledged "some gaps in the structure [of legislative and administrative safeguards] may still appear." (*Id.* at p. 876.) However, whether such gaps are intentional or unintentional, "we should nevertheless allow the Legislature to address in the first instance the difficult task of striking the proper balance" between preserving personal privacy and facilitating state interests. (*Ibid.*) Thus, disseminating arrest records including "undocumented person" data within the criminal justice system does not violate the right to privacy. (*Id.* at p. 877.)

Nor does ARJIS's collection of "undocumented person" information violate the right to privacy. Several California Courts of Appeal decisions have authorized gathering information regarding immigration status, even outside the context of an arrest. ■ Questioning a criminal arrestee about his immigration status is not constitutionally defective. (*Gates* v. *Superior Court* (1987) 193 Cal.App.3d 205, 219 [238 Cal.Rptr. 592].) Requiring an alien claimant of unemployment benefits to furnish evidence the Immigration and Naturalization Service is aware of his presence in the United States does not violate any of his rights. (*Alonso* v. *State of California* (1975) 50 Cal.App.3d 242, 250 [123 Cal.Rptr. 536, 87 A.L.R.3d 678], cert. den. 425 U.S. 903 [47 L.Ed.2d 752, 96 S.Ct. 1492].) And this court has held that requiring a person crossing the border from Mexico into California to produce credentials entitling him to enter the United States does not violate his rights. (*People* v. *Mendoza* (1967) 251 Cal.App.2d 835, 840 [60 Cal.Rptr. 5].)

■ Therefore, gathering and disseminating information regarding arrestees' immigration status within the criminal justice system does not violate the right to privacy guaranteed in the California Constitution. Since American's complaint does not go beyond allegations of such actions, it fails to state a cause of action for violation of the right to privacy under the California Constitution.

## III

### Due Process

■ American contends collecting and disseminating "undocumented person" information denies due process of law to arrestees.

The constitutional guaranty of due process extends to protect aliens, including illegal aliens. (*Plyler* v. *Doe* (1982) 457 U.S. 202, 210 [72 L.Ed.2d 786, 795, 102 S.Ct. 2382].) The Supreme Court uses a balancing test to determine whether there has been a denial of procedural due process: the private interest and "risk of an erroneous deprivation of such interest through the procedures used" are weighed against the governmental interest at stake. (*Mathews* v. *Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 33, 96 S.Ct. 893].)

The private interest here is in the accuracy of arrest records containing immigration status information which might subsequently be used to arrestees' disadvantage. Gathering and disseminating "undocumented person"

information which may be inaccurate poses a risk to that interest.[2] We first observe American does not assert any concrete action taken against arrestees by ARJIS. This is not a case where "undocumented status" information was used to deprive persons of their rights. Instead, American asserts the act of merely recording such information in the criminal justice system denies due process because it may be inaccurate and might someday be used to arrestees' disadvantage. The California Supreme Court recognized the dangers of inaccurate arrest records and their use against arrestees. (*Loder* v. *Municipal Court, supra*, 17 Cal.3d 859, 868.) However, persons may inspect and request correction of inaccurate arrest records. (*Id*. at p. 871.) If the originating agency refuses to correct the records, the person is entitled to administrative adjudication followed by judicial review. (*Ibid*.) Because of these and other safeguards on the accuracy and dissemination of arrest records, the Supreme Court summarily rejected claims that disseminating possibly inaccurate arrest records denies due process. (*Id*. at p. 868, fn. 4.)

Weighed against the private interest in accurate records are the legitimate law enforcement reasons for gathering "undocumented person" information we have already noted. These legitimate governmental interests weigh heavily against the privacy interests of the arrestees, especially in view of the legislative safeguards already in place.

Since neither collecting nor disseminating "undocumented person" information upon arrest denies due process under the United States Supreme Court's balancing test and California law, American's complaint does not state a cause of action for denial of due process.

IV

*Equal Protection*

■ American claims ARJIS denies arrestees equal protection of the laws when police check off the "undocumented person" box.

---

[2] American's complaint, which for purposes of this appeal we accept as accurate, asserts police may check off the "undocumented person" box based on an arrestee's Hispanic appearance and command of English, the standard Caucasian North American English accent, or both. (Officers may use Hispanic appearance as a factor in investigating whether a person is an illegal alien. The United States Supreme Court has held referrals based on apparent Mexican ancestry to secondary areas at permanent checkpoints do not violate constitutional rights. *United States* v. *Martinez-Fuerte* (1976) 428 U.S. 543, 563 [49 L.Ed.2d 1116, 1131-1132, 96 S.Ct. 3074]; but see *United States* v. *Brignoni-Ponce* (1975) 422 U.S. 873, 886-887 [45 L.Ed.2d 607, 619-620, 95 S.Ct. 2574].) American's facts also state the danger of mistake regarding "undocumented person" status exists both when the police make a determination on their own using the above factors, and when they ask the arrestee his or her status. Therefore, when police check the box on their own initiative, the "risk of erroneous deprivation" is not different in kind than when they first ask the arrestee.

Illegal aliens are not a "suspect class" for purposes of equal protection scrutiny. (*Plyler* v. *Doe, supra*, 457 U.S. 202, 223 [72 L.Ed.2d 786, 803].) In *Plyler,* the Supreme Court subjected a classification based on status as an illegal alien to an "intermediate" level of scrutiny instead of the low-level "rational basis" scrutiny usually reserved for a non-suspect class, because the persons involved were children brought into the United States and therefore not accountable for their status. (*Ibid.*) Additionally, the children in *Plyler* were denied education, resulting in "lifetime hardship" by marking them with the stigma of illiteracy.[3] (*Ibid.*) These factors of nonaccountability for status and lifetime hardship are not present here. Therefore, the test in this case is whether collecting and disseminating "undocumented person" information "bears some fair relationship to a legitimate public purpose."[4] (*Id.* at p. 216.)

Here, there are several legitimate public purposes which require collection and dissemination of "undocumented person" information. As noted above, officers may and in some cases must notify federal authorities when an arrestee is an illegal alien. (Health & Saf. Code, § 11369; 67 Ops.Cal.Atty.Gen. 331 (1984); 8 U.S.C.A. § 1357(e).) Immigration status is relevant to release on the arrestee's own recognizance and to sentencing. (*Van Atta* v. *Scott, supra*, 27 Cal.3d 424, 438; *People* v. *Sanchez, supra*, 190 Cal.App.3d 224, 230.) Noting on the arrest form whether an arrestee is an "undocumented person" is a logical way to gather this needed information. Therefore, it bears "some fair relationship" to legitimate public purposes, and American's complaint does not state a cause of action for denial of equal protection of the laws.

■  American also claims state officials have no power to act with respect to illegal aliens as ARJIS has because such action is preempted by federal regulation. However, states have authority to act with respect to illegal aliens "where such action mirrors federal objectives and furthers a legitimate state goal." (*Plyler* v. *Doe, supra*, 457 U.S. 202, 225 [72 L.Ed.2d 786, 805].) Here, collecting and disseminating "undocumented person" information of arrestees mirrors federal objectives in that both state and federal law provides that local law enforcement officials notify federal authorities when they have illegal alien arrestees in their custody. (Health &

---

[3] Even so, four dissenting justices wanted to use the "rational basis" test. (*Plyler* v. *Doe, supra*, 457 U.S. at p. 248 [72 L.Ed.2d at p. 820].)

[4] American seeks to set a higher standard of equal protection scrutiny by citing *Nyquist* v. *Mauclet* (1977) 432 U.S. 1 [53 L.Ed.2d 63, 97 S.Ct. 2120], which states classifications based on alienage are "inherently suspect." (*Id.* at p. 7 [53 L.Ed.2d at p. 69.) However, the distinction between legal aliens (as in *Nyquist*) and illegal aliens whose entry into this class is voluntary and itself a crime (as here) was the heart of the *Plyler* court's refusal to regard illegal aliens as a suspect class. (*Plyler* v. *Doe, supra*, 457 U.S. 202, 219, fn. 19 [72 L.Ed.2d 786, 800-801].)

Saf. Code, § 11369; 8 U.S.C.A. § 1357(e).) As noted above, collecting and disseminating this information furthers legitimate state goals. Therefore, ARJIS's actions are not preempted by federal regulation.

V

*Unauthorized Expenditure of Public Funds*

■ American challenges the collection and dissemination "undocumented person" information as an unauthorized expenditure of public funds. We find this challenge unpersuasive. These practices are authorized by the statutory and case law noted above that requires gathering and disseminating arrestees' immigration status. Therefore, American's complaint does not state a cause of action for unauthorized expenditure of public funds.

DISPOSITION

The judgment is affirmed.

Work, J., and Nares, J., concurred.