332 F.3d 1205
 Virginia Dumlao TANIGUCHI, Petitioner-Appellant,
v.
John Paul SCHULTZ; Kathleen Hawy Sawyer; Doris Meissner; John Ashcroft, Attorney General, Respondents-Appellees.
Virginia Agustin Taniguchi, Petitioner,
v.
John Ashcroft, Attorney General, Respondent.
 No. 00-16928.
 No. 00-71053.
 United States Court of Appeals, Ninth Circuit.
 Filed June 18, 2003.
 
 Virginia Dumlao Taniguchi, Marysville, CA, pro se.
 Jocelyn Burton, Robert Yeargin, USSF — Office of the U.S. Attorney, San Francisco, CA, Linda S. Wernery, DOJ — U.S. Department of Justice, Civil Div./Office of Immigration Lit., for Respondent-Appellee.
 Before RONEY,* HUG, THOMAS, Circuit Judges.
 Order; Dissent by Judge PREGERSON.
 ORDER
 PER CURIAM.
 
 
 1
 The panel has voted to deny the petition for panel rehearing. Judge Thomas has voted to reject the suggestion for rehearing en banc and Judges Roney and Hug have so recommended.
 
 
 2
 The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R.App. P. 35.
 
 
 3
 The petition for panel rehearing and the petition for rehearing en banc are denied.
 
 
 
 Notes:
 
 
 *
 Honorable Paul H. Roney, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation
 PREGERSON, Circuit Judge with whom Judge REINHARDT joins, dissenting from our court's denial of rehearing en banc.
 I respectfully dissent from the order denying rehearing en banc. It is a bedrock principle of our law "that all individuals in the United States — citizens and aliens alike — are protected by the Due Process Clause of the Constitution." Garberding v. INS, 30 F.3d 1187, 1190 (9th Cir.1994) (citing Mathews v. Diaz, 426 U.S. 67, 77, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)). Furthermore, "[i]t is equally well established that the Due Process Clause incorporates the guarantees of equal protection." Id. (citing Johnson v. Robison, 415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974)). In my view, INA § 212(h), 8 U.S.C. § 1182(h), which denies discretionary relief from removal to Legal Permanent Residents (LPRs) convicted of an aggravated felony, but makes such relief available to illegal aliens (non-LPRs) who are convicted of an aggravated felony, violates the equal protection guarantees afforded all aliens under the Fifth Amendment. Not only does § 212(h) irrationally discriminate against LPRs, but the rationale the panel attributes to Congress to defend § 212(h) against an equal protection challenge is illogical and inconsistent with the statute's purpose.
 I believe there is no rational justification for providing the benefit of discretionary relief from removal to non-LPRs who have committed aggravated felonies, while denying the same relief to LPRs who have also committed aggravated felonies. I also believe that § 212(h) is fundamentally unfair because unlike its beneficial treatment of non-LPRs, § 212(h) punishes LPRs who are immigrants that have taken a positive step to become lawful members of American society. Section 212(h) in effect rewards aliens who have committed two crimes — an unlawful entry and an aggravated felony — while punishing aliens who have committed only one crime — an aggravated felony.
 The Supreme Court has emphasized that LPRs "like citizens, pay taxes, support the economy, serve in the Armed Forces, and contribute in myriad other ways to our society." In re Griffiths, 413 U.S. 717, 722, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). For this reason, both Congress and the Supreme Court have historically treated LPRs more favorably than non-LPRs. In Landon v. Plasencia, 459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982), for example, the Supreme Court stated: "once an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly." Landon, 459 U.S. at 32, 103 S.Ct. 321 (holding that an LPR who left the country for a brief period and was placed in exclusion proceedings upon return was entitled to claim greater procedural protections under the Due Process Clause than non-LPRs seeking initial entry). Congress has also consistently favored LPRs over non-LPRs. See, e.g., 8 U.S.C. § 1153 (considering LPRs the most favored category in allocation of immigrant visas); 8 U.S.C. § 1229(b) (requiring seven year continuous physical presence requirement for LPRs but ten year requirement for non-LPRs); 8 U.S.C. §§ 1601-1666 (eliminating all welfare benefits for non-LPRs but preserving some benefits for LPRs).
 I am at a loss to understand how the rationale the panel attributed to Congress to uphold § 212(h) saves it from rational basis scrutiny. The majority concludes that the statute makes a rational distinction between LPRs and non-LPRs because Congress could have believed that LPRs who committed an aggravated felony were more likely to be recidivists than non-LPRs who committed the same crime. The majority reasons that Congress favored non-LPRs over LPRs because it believed that LPRs who commit an aggravated felony are more likely to be recidivist because their substantial employment and family ties in the United States were insufficient to deter them from the criminal conduct that rendered them deportable.
 The panel's premise that LPRs have more substantial family relations and employment ties to the United States is contrary to the text and purpose of § 212(h). I emphasize that the INS only grants relief to non-LPRs under § 212(h) if the applicant has strong family ties in the United States. To qualify for § 212(h) relief, a non-LPR must be a "spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence." INA § 212(h)(1)(B), 8 U.S.C. § 1182(h)(1)(B). Furthermore, the Attorney General is authorized to grant § 212(h) relief to non-LPRs "if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien."[1] Id. In addition, the BIA may grant relief under § 212(h) where a non-LPR can establish other close connections to the United States, including:
 family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community....
 Matter of Marin, 16 I. & N. Dec. 581, 584-85, 1978 WL 36472 (1978). Accordingly, the Attorney General may grant a non-LPR discretionary relief under § 212(h) only if the non-LPR has strong family, property, employment, and community ties to the United States. So here's the rub, non-LPRs eligible to receive § 212(h) discretionary relief, under the panel's rationale, would be influenced by the "deterrents" to committing an aggravated felony that the panel assumed LPRs exclusively possess: United States-based families and employment to support their families.[2]
 Furthermore, the notion that "aggravated felon LPRs could be viewed as less deserving of a second chance than non-LPRs,"[3] because they have jeopardized their status by committing a crime, is illogical. If anything, non-LPRs have more to risk by committing a crime. When a non-LPR commits a crime, he or she risks his or her presence in the United States because both the state and federal government routinely check the immigration status of individuals following an arrest. See, e.g., Cal. Health & Safety Code § 11369 (requiring agency arresting individual for drug crimes to notify the "appropriate agency of the United States having charge of deportation matters" if there is reason to believe the individual may not be a citizen of the United States); 8 U.S.C. § 1357(d) (describing process for federal, state or local law enforcement officials to report an individual arrested for controlled substance crimes when the officer has reason to believe that he or she is not lawfully present in the United States); Am. G.I. Forum v. Miller, 218 Cal.App.3d 859, 267 Cal.Rptr. 371 (Cal.App.1990) (upholding against various constitutional challenges California's Automated Regional Justice Information System arrest form which requires arresting officer to ask and record whether the arrestee is an undocumented person in part because officers may have to "notify federal authorities when an arrestee is an illegal alien"). A non-LPR risks removal based on his or her undocumented status alone when he or she commits a crime because federal or state officials routinely check arrestees' immigration status. By contrast, when an LPR commits a crime, his or her status as an LPR will not subject him or her to immigration proceedings. Thus, non-LPRs arguably have a more compelling incentive to obey the law than LPRs.
 The majority's characterization of § 212(h) relief as a rational "first step" towards the legitimate goal of removing criminal aliens from the United States is also untenable. A piecemeal reform effort does not authorize Congress to draw arbitrary distinctions. Even when Congress takes an incremental step toward a broader reform that creates discrimination against a certain group, the resulting "disparity of treatment" must be rationally related to some legitimate government purpose; Congress' decision to start with LPRs must be rational. See Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). If Congress' intent was to remove criminal aliens, § 212(h) is not a rational step toward this goal because it makes relief available to people who have committed two crimes while barring relief to those who have committed only one. There is no rational basis for Congress to effectuate its "first step" in streamlining the removal process for dangerous aliens by treating LPRs and non-LPRs differently; a more rational distinction would be based on the nature of the crime rather than on an alien's immigration status.
 Because I believe that § 212(h) violates the bedrock concept of equal protection under the law, I respectfully dissent from our court's denial of rehearing en banc.
 Notes:
 
 
 [1]
 The majority assumes in its holding, and I agree, that § 212(h) applies to aliens both within the United States and aliens seeking admission into the United States
 
 
 [2]
 By upholding § 212(h) on the basis that Congress could have believed that LPRs were more likely to be recidivists than non-LPRs because LPRs have more substantial family ties to the United States, the panel contravenes our rule that courts examining equal protection challenges must be "careful not to attribute to the government purposes which it cannot reasonably be understood to have entertained."Wauchope v. United States Dept. of State, 985 F.2d 1407, 1415 (9th Cir.1993) (internal citations and brackets omitted). The plain language of § 212(h) illustrates that it is inconceivable that Congress barred LPRs from § 212(h) discretionary relief because Congress believed that LPRs were less deserving of relief because of their family ties to the United States; family ties are a statutory prerequisite for non-LPRs to obtain relief under § 212(h). Thus, Congress could not have believed that family connections rendered LPRs less worthy of relief because Congress explicitly conditioned eligibility under § 212(h) to non-LPRs who have substantial family ties to a United States citizen or LPR parent, spouse, or child.
 
 
 [3]
 Taniguchi v. Schultz, 303 F.3d 950, 958 (9th Cir.2002) (internal cite omitted).