Filed 5/22/14  P. v. Soteras CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057947 |
| v. | (Super.Ct.No. SWF1102851) |
| RICHARD JOHN SABAT SOTERAS, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mac R. Fisher, Judge.

Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and William M. Wood and Heather F. Crawford, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I. INTRODUCTION

A jury found defendant Richard John Sabat Soteras guilty as charged of felony child endangerment and assault with a deadly weapon, a car, and also found defendant personally used a deadly weapon, a car, in the assault. (Pen. Code, § 273a, subd. (a),[1] count 1; § 245, subd. (a)(1), count 2; § 1203, subd. (e)(2) [personal use allegation].) Defendant's stepson, 17-year-old John Doe, was the victim of the crimes. Defendant was sentenced to two years in prison and appeals, raising a single claim of sentencing error.

Defendant claims the court abused its sentencing discretion in refusing to consider the "immigration consequences" of sentencing him to prison rather than probation, specifically, that his prison sentence could cause him to be deported. Defendant is a permanent resident of the United States and a citizen of the Philippines, but he is not a United States citizen. He has lived in the United States since 1985 and holds a bachelor's of science degree in nursing.

We find no abuse of the trial court's sentencing discretion. Given that defendant personally used a deadly weapon in the assault, if the court was to grant probation it had to find the case was "unusual" and probation was otherwise appropriate. (§ 1203, subd. (e)(2) [prohibiting probation, except in "unusual cases," when conviction involves personal use or attempted use of deadly weapon]; Cal. Rules of Court, rule 4.413(b) [probation in unusual cases],[2] (c) [facts showing unusual case]; rule 4.414 [criteria

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] All further references to rules are to the California Rules of Court.

2

affecting probation].)  Nothing in the rules required the court to consider defendant's immigration status in determining whether his case was unusual, and if so, whether he should have been granted probation.  Accordingly, we affirm the judgment.

## II.  FACTUAL BACKGROUND

### A. *Prosecution Evidence*

Defendant and his wife, Glenda, married in 2005.  At the time, Glenda had a young son, Doe, from a prior relationship, and she and defendant had four more sons over the next several years.  Defendant raised Doe as his own, along with the other boys.  In early 2009, defendant developed a peripheral neuropathy, could no longer work, and stayed home and cared for the boys while Glenda worked outside the home.

Around 12:30 p.m. on November 11, 2011, defendant and Glenda were engaged in a heated argument in their upstairs bedroom after defendant accused Glenda of scratching their youngest son's face.  According to Glenda, the altercation included a  struggle during which defendant "pinned" her "against the wall" for 10 minutes.  Glenda described the altercation as "just one of those days again."  During the argument, Doe came into the bedroom.  Defendant said something to Doe about Glenda being responsible for the family's "misfortunes" and told Doe he was going to report Glenda to the police for scratching their youngest son's face.

That day, defendant was planning to take his and Glenda's four younger sons to San Diego to visit their grandparents, and the four boys were waiting for defendant in a car parked on the street.  After speaking to Doe, defendant walked outside to the car.

3

Moments earlier, Glenda came outside and was trying to remove the boys from the car by reaching through the car door or window. Defendant told one of the boys to lock the car doors and close the windows. Doe came outside and stood in front of the car in order to keep defendant from driving away. Glenda and Doe testified they were concerned for the safety of the younger boys because they believed defendant had been drinking.

Defendant started the car and, with the four younger boys still inside, drove slowly forward. The car "impact[ed]" Doe, who jumped onto the hood near the windshield. Defendant told Doe to get off the car, and drove a distance of one or two houses before stopping, but Doe refused to get off the hood. Defendant continued driving slowly at around 15 miles per hour, until he reached the gate to the family's gated community. A man in a red Mustang saw defendant drive through the gate and turn onto Redhawk Parkway, a two-way street with a 45 to 55 mile per hour speed limit, with Doe on the hood of the car.

The man in the Mustang saw defendant drive for approximately 200 yards on Redhawk Parkway and accelerate to "at least" 30 miles per hour with Doe still on the hood of his car, before he pulled to the side of the road. Moments earlier, the man saw defendant drive slowly through the gate, apparently trying to "nudge" Doe out of his way, and heard Doe yelling "help." After defendant pulled to the side of the road, the man parked his car behind defendant's car, and told Doe to step away from defendant's car. Doe complied, and the man took Doe home. Defendant drove to a nearby sheriff's

4

station to report the incident and was eventually arrested. According to one of the arresting officers, defendant did not appear to be intoxicated.

Glenda testified she and defendant had a "[b]umpy" marriage, which became worse over time, and they frequently engaged in verbal and physical altercations. In February 2008, defendant was arrested after he cut Glenda's hair during an argument and was ordered to attend anger management classes. In August 2008, neighbors called police after Glenda and defendant were arguing. On that occasion, Glenda told police her red eyes and nose were due to allergies, but at trial testified defendant had beaten her. Glenda also testified that in February 2009 defendant beat her when she was eight months pregnant with their youngest son. During that incident, Glenda scratched defendant's neck, and the police report indicated she had no injuries. In May 2011, Glenda tore defendant's shirt and left six visible scratches on his chest.

According to Doe, Glenda and defendant often argued, and he once saw defendant grabbing Glenda's hair. A year before November 2011, Doe pushed defendant during an argument between defendant and Glenda because he thought defendant was about to beat up Glenda.

B. *Defense Evidence*

Defendant suffered from peripheral neuropathy, a nerve disorder that affects his hands and feet and causes pain and balance problems. He had served in the Army Reserve as a combat medic and had worked in a nursing home, but was no longer able to work outside the home due to his medical condition. In November 2011, he was

5

handling all of the household chores and was the primary caretaker for Doe and his and Glenda's other sons.

Defendant claimed Glenda generally instigated arguments and had been abusive to him throughout their relationship. She would hide his medication, and often told defendant he could call the police but they would not believe him due to his prior domestic violence conviction. He pled guilty to "public disturbance" in 2008 based on the hair-cutting incident,[3] attended 52 weeks of anger management classes, and successfully completed probation.

The November 2011 argument lasted four minutes, not 20 to 30 minutes as Glenda claimed. During the argument, Doe came into the room and pushed defendant, nearly causing him to fall. Defendant followed his anger management training and tried to walk away by going to the car, but Glenda and Doe followed him. Glenda was "furious" and tried to remove their youngest son from the car while Doe stood in front of the car looking angry and kicking the tire. When defendant started the car, Glenda told Doe not to let defendant drive away. Defendant removed his foot from the brake and the car began to roll. At that point, Doe jumped onto the hood and grabbed the edge of the car next to the windshield wipers.

Defendant drove with Doe on the car because he feared for his and the younger boys' safety in light of past emotional and physical abuse by Glenda and Doe. Before he

---

[3] The record indicates that defendant pled guilty to misdemeanor disturbing the peace based on the 2008 hair-cutting incident. (§ 415.)

6

reached Redhawk Parkway, he stopped several times to allow Doe to get off the car. He stopped again just after he reached Redhawk Parkway, because he did not want to drive on a main road with Doe on the car, and he hoped the man in the red Mustang could help him.

C. *Verdicts*

As indicated, the jury found defendant guilty as charged of child endangerment and assault with a deadly weapon, a car, and further found defendant "did personally use and attempt to use a deadly weapon, to wit, a car," in the assault on Doe. (§ 273a, subd. (a) [child endangerment], count 1; § 245, subd. (a)(1) [assault], count 2; § 1203, subd. (e)(2) [deadly weapon finding].)

D. *Sentencing*

At sentencing, Glenda asked the court to grant defendant probation. The probation department recommended against probation and in favor of an unspecified prison term. Defense counsel argued in favor of probation, and indicated a prison sentence would likely cause defendant to be deported. Both parties filed sentencing memoranda.

At the hearing, defense counsel conceded that nothing in the applicable rules of court (rules 4.413, 4.414) required the court to consider defendant's immigration status in determining whether to grant probation. The court agreed, commenting, "I don't think the immigration status is of concern to me," and added it was unaware of any rules of court requiring it to consider defendant's immigration status in determining whether to grant probation. Instead, the court correctly pointed out it was required to find the case

7

was unusual in order find defendant eligible for probation, given that defendant personally used a deadly weapon in the assault. (§ 1203, subd. (e)(2); rule 4.413.) And if the case was unusual, it was also required to consider the criteria set forth in rule 4.414 in determining whether to grant probation.

Defense counsel further conceded he could not "pinpoint to one issue" that made the case unusual, but argued based on the "entire trial" and the totality of the circumstances that defendant should be granted probation. Among other things, defense counsel pointed out that defendant, using his anger management training, attempted to diffuse the situation by walking away from the altercation with Glenda and Doe. In addition, defendant did not intentionally "[try] to use the car . . . as a weapon" against Doe, although he "made poor choices" in driving the car on a major road with Doe on the hood.

The court said it agreed with much of defense counsel's argument, but nonetheless determined the case was not unusual and denied probation, reasoning that more factors favored denying probation than granting it. The court said it had read the rules of court and had given the matter "a lot of thought." Although defendant was not "a sophisticated criminal," the victim was a minor, and defendant had "multiple opportunities . . . to stop his car until the confrontation ceased." Defendant was not in any danger from Doe because his car windows were rolled up, yet he drove onto a "high speed roadway" with Doe on the hood of the car, risking serious injury or death to Doe if his car were struck and Doe were thrown off of the car. Defendant also "blam[ed] others," including Glenda,

8

"for put[ting] him into the predicament that this jury found him responsible for."  The

court imposed the low term of two years on the child endangerment conviction, and

imposed but stayed a two-year term on the assault conviction.

### III.  DISCUSSION

Defendant claims the court abused its sentencing discretion in denying probation,

solely because it refused to consider the "immigration consequences" of sentencing him

to prison rather than probation, specifically, the fact he was "likely" to be deported if

sentenced to prison rather than probation.  He argues the case must be remanded for

resentencing with directions to consider the immigration consequences of denying him

probation and sentencing him to prison.  But as the People point out, defendant's claim

lacks merit for several reasons.

A.  *Defendant Forfeited His Claim by Conceding It at the Sentencing Hearing*

First, defendant has forfeited his abuse of discretion claim because defense

counsel conceded at the sentencing hearing that the applicable rules of court (rules 4.413,

4.414) did not require the court to consider the likely immigration consequences to

defendant in the event he was denied probation.  (*People v. Scott* (1994) 9 Cal.4th 331,

353 [waiver (or forfeiture) rule applies to court's "failure to properly make" its

discretionary sentencing choices].)  Defense counsel was charged with "understanding,

advocating, and clarifying" the court's permissible sentencing choices at the sentencing

hearing.  (*Ibid*.)  Because defense counsel did not urge the court to consider the

immigration consequences to defendant of denying him probation, defendant may not

9

now claim on appeal that the court abused its discretion in failing to consider this factor in denying probation and sentencing him to a prison term.

B.  *The Court Properly Considered All Relevant Sentencing Factors*

Second, the court thoroughly and properly considered all relevant factors listed in rules 4.413 and 4.414 in finding the case was not unusual and denying probation.  As defendant concedes, he was ineligible for probation unless the court found his case was unusual because he personally used a deadly weapon, a car, in the assault against Doe. (§ 1203, subd. (e)(2) [any person who uses or attempts to use a deadly weapon against a human being in perpetrating the underlying crime is ineligible for probation, "[e]xcept in unusual cases where the interests of justice would best be served if the person is granted probation"].)

The determination whether a case is unusual and the defendant is eligible for probation—notwithstanding a statutory limitation—is governed by rule 4.413 and is reviewed for an abuse of discretion.  (*People v. Stuart* (2007) 156 Cal.App.4th 165, 177-178; see also *People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 829-831 [applying former rule 413, predecessor to rule 4.413 in finding unusual case].)  Nothing in rule 4.413 required the court to consider the immigration consequences of denying defendant probation in determining whether the case was unusual.[4]  Thus here, the court

---

[4]  Rule 4.413(b) states:  "If the defendant comes under a statutory provision prohibiting probation 'except in unusual cases where the interests of justice would best be served,' [e.g., § 1203, subd. (e)(2)] or a substantially equivalent provision, the court should apply the criteria in (c) to evaluate whether the statutory limitation on probation is

*[footnote continued on next page]*

did not abuse its discretion in refusing to consider this factor in determining the case was not unusual, and defendant was therefore ineligible for probation.

Though it was not required to determine whether probation was appropriate under rule 4.414 given defendant's ineligibility for probation under rule 4.413, the court nonetheless thoroughly considered whether probation was appropriate under rule 4.414.[5]

---

*[footnote continued from previous page]*
overcome; and if it is, the court should then apply the criteria in rule 4.414 [facts relating to the crime and facts relating to the defendant] to decide whether to grant probation."

Rule 4.413(c) states: "The following facts may indicate the existence of an unusual case in which probation may be granted if otherwise appropriate: [¶] (1) *Facts relating to basis for limitation on probation* [¶] A fact or circumstance indicating that the basis for the statutory limitation on probation, although technically present, is not fully applicable to the case, including: [¶] (A) The fact or circumstance giving rise to the limitation on probation is, in this case, substantially less serious than the circumstances typically present in other cases involving the same probation limitation, and the defendant has no recent record of committing similar crimes or crimes of violence; and [¶] (B) The current offense is less serious than a prior felony conviction that is the cause of the limitation on probation, and the defendant has been free from incarceration and serious violation of the law for a substantial time before the current offense. [¶] (2) *Facts limiting defendant's culpability* [¶] A fact or circumstance not amounting to a defense, but reducing the defendant's culpability for the offense, including: [¶] (A) The defendant participated in the crime under circumstances of great provocation, coercion, or duress not amounting to a defense, and the defendant has no recent record of committing crimes of violence; [¶] . . . [¶] (C) The defendant is youthful or aged, and has no significant record of prior criminal offenses."

[5] Rule 4.414 states: "Criteria affecting the decision to grant or deny probation include facts relating to the crime and facts relating to the defendant." Facts relating to the crime are listed in rule 4.414(a) and include "(1) The nature, seriousness, and circumstances of the crime as compared to other instances of the same crime"; and "(2) Whether the defendant was armed with or used a weapon." Facts relating to the defendant are listed in rule 4.414(b) and include "(1) Prior record of criminal conduct, whether as an adult or a juvenile, including the recency and frequency of prior crimes; and whether the prior record indicates a pattern of regular or increasingly serious criminal conduct; [¶] (2) Prior performance on probation or parole and present probation or parole status; [¶] (3) Willingness to comply with the terms of probation; [¶] (4)

*[footnote continued on next page]*

11

In arguing probation should have been granted based on his immigration status and the likelihood he would be deported if sentenced to prison, defendant rehashes some of the rule 4.414 factors favorable to him, but he ultimately concedes the court considered these factors before finding they were outweighed by unfavorable factors, including the circumstances of the offense and his lack of remorse.

Indeed, defendant argues, "[h]ad the . . . [c]ourt also considered the immigration consequences [of its sentencing decision, he] would concede that the court . . . followed the law and did not abuse its discretion in denying probation." But as defense counsel conceded at the sentencing hearing, nothing in rule 4.414 required the court to consider defendant's immigration status, or the likelihood he would be deported, in determining whether probation was appropriate, assuming he was eligible for probation.

C. *Defendant Has Not Shown He is Likely to be Deported Unless Granted Probation*

Third, on this record defendant has not shown he is likely to be deported unless granted probation. As the People point out: "Under federal law, 'Any alien who . . . is convicted of a crime for which a sentence of one year or longer may be imposed . . . is deportable.'" (8 U.S.C.A. § 1227(a)(2)(A)(i).)

Defendant was convicted of felony child endangerment and assault with a deadly weapon, and each of these crimes is punishable by imprisonment in the state prison for

---

*[footnote continued from previous page]*
Ability to comply with reasonable terms of probation . . . ; [¶] (5) The likely effect of imprisonment on the defendant and his or her dependents; [and] [¶] (6) The adverse collateral consequences on the defendant's life resulting from the felony conviction; . . . ."

12

two, three, or four years.  (§§ 273a, subd. (a), 245, subd. (a)(1).)  Thus, on this record, defendant is no less likely to be deported if granted probation rather than sentenced to prison.

D.  *Sanchez Does Not Assist Defendant's Claim*

Defendant relies on *People v. Sanchez* (1987) 190 Cal.App.3d 224 for the proposition that the court was required to consider the immigration consequences of denying him probation.  *Sanchez* does not support this proposition.  There, the defendant was an undocumented alien, convicted of selling heroin.  (*Id.* at p. 227.)  The trial court denied probation in part because the defendant was in the United States illegally, had few ties to the community, and was therefore unlikely to comply with the terms of any probation.  (*Id.* at pp. 230-231; former rule 4.414(d)(3).)  On appeal, the defendant argued the denial of probation based on his immigration status violated his equal protection and due process rights under the federal and state Constitutions.  (*People v. Sanchez, supra,* at p. 228.)  The *Sanchez* court rejected these claims and affirmed the judgment denying probation.  (*Id*. at pp. 230, 232.)

As the People point out, the issue in *Sanchez* was whether the defendant's illegal immigration status could be cited as a reason for not granting him probation, e.g., because a deported illegal alien felon would be unable to comply with the terms and conditions of his probation beyond serving any period of local incarceration.  (*People v. Sanchez, supra,* 190 Cal.App.3d at p. 230.)  *Sanchez* does not stand for the proposition that a

13

defendant's deportability *must* be considered in determining whether the defendant should be *granted* probation rather than sentenced to prison.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
                                                                                    J.

We concur:

McKINSTER
          Acting P. J.

MILLER
          J.

14